BENNETT vs. HARMS and another.

*January 13 — February 8, 1881.*

DOWER. *(1) Legislative power over inchoate right. (2) Validity of statute distinguishing between residents and non-residents, as to dower. (3–5) Statute construed.*

1. Before the husband's death, the inchoate right of dower in the wife is under the absolute control of the legislature, subject to the limitation that there can be no distinction "between resident aliens and citizens" in that respect. Const. of Wis., Art. I, sec. 15.

2. The statute of this state which provides that "a woman, being an alien, shall not on that account be barred of her dower; but any woman residing out of this state shall be entitled to dower only of lands of her husband, being in this state, *of which he died seized*" (R. S., sec. 2160), is valid, and not in conflict with that clause of the state constitution above mentioned, nor with the provision of the federal constitution against impairing the obligation of contracts, or that preserving the privileges and immunities of citizens in the several states.

3. The non-residence intended by this statute is non-residence *at the time of the husband's death,* and not at the time of his conveyance of the land.

---

Bennett vs. Harms and another.

---

4. Prior to the late revision, the discriminating clause was affirmative in form; but by implication it must be construed to have had a negative effect; and the insertion of the word "only" in the revision has made no essential change in the meaning.

5. A woman who is neither a citizen nor resident of this state at the time of her husband's death, is not entitled to dower in lands (not being a homestead) within this state, which he conveyed during their marriage without her signature.

APPEAL from the Circuit Court for *Grant* County.

The case is thus stated by Mr. Justice CASSODAY:

" *Mary* and John Bennett were married in 1845, and lived together as husband and wife on the farm in question, in Grant county, until the spring of 1863. In May, 1863, *Mary Bennett*, the plaintiff here, with their six children, went to California, where they remained until 1872, when she came back to Wisconsin, and, after remaining a short time, returned to her children in California. At the time *Mrs. Bennett* and the children went to California, in May, 1863, John Bennett also left the farm, and never thereafter lived upon it. In October, 1864, John Bennett obtained a judgment of divorce from his wife in the circuit court for Grant county, which the plaintiff claims was void, for the alleged reason that the summons was never served upon her, and that she in fact had no information of such action until two years after the entry of the decree. The judgment roll in that divorce suit contains a summons, and proof that it was published in the Grant county *Witness* six successive weeks, commencing August 11, 1864, and ending September 29, 1864, and filed with the clerk of the court October 10, 1864; but it contains no order of publication, nor affidavit for such order, nor proof of sending by mail or otherwise, or serving the summons and complaint upon *Mrs. Bennett*, and the decree is silent as to the service of the summons. In December, 1864, and when John Bennett, his wife and children, had permanently ceased to occupy the premises as a homestead, he, without the signature of his wife, sold and conveyed the farm in question to the defendant

Bennett vs. Harms and another.

*Harms, Sr.,* who took possession as exclusive owner within a few months thereafter, and has continued to hold the same as such ever since. In 1865, John Bennett ceased to be a resident of Wisconsin, and became a resident of Galena, in the state of Illinois, where he continued to reside until November 4, 1878, when he died. In May, 1879, this action was commenced by *Mary Bennett* against *Harms, Sr.,* and *Harms, Jr.,* to recover dower in the lands so conveyed to *Harms,* and also her right as widow to forty acres as homestead."

The court, on defendant's motion, ordered a judgment of nonsuit; and plaintiff appealed from the judgment.

For the appellant there were briefs by *A. W. Bell,* her attorney, with *Spensely & Baume,* of counsel; and oral argument by *Mr. Bell.* They argued, *inter alia,* that, by the concurrence of her coverture and her husband's seisin, the plaintiff acquired a right of dower in the premises, which could be defeated only by her death, a divorce, or her voluntary act. *Godfrey v. Thornton,* 46 Wis., 683; 1 Washb. on R. P., 250. The legislature can make no distinction between resident and non-resident widows. Citizens of other states are entitled to the same privileges and immunities as citizens of this state. Const. of U. S., art. IV, sec. 2; *Van Buren v. Downing,* 41 Wis., 126; *Welton v. Missouri,* 91 U. S., 275. The rights of the plaintiff were acquired under the common law in force in this territory at the time of the marriage, and the law as it stood when the husband became seized of the premises. She cannot, by a subsequent legislative enactment, be deprived of those rights, on the ground that she resided, at the time of the husband's death, in another state. If so, the husband could, at any time, by removing to another state, cut off the wife from all rights in his estate, it being her duty to follow the fortunes and domicile of the husband. *Godfrey v. Thornton,* 46 Wis., 683; *Gleason v. Gleason,* 4 id., 64.

For the respondents there was a brief by *Barber & Clementson,* and oral argument by *Mr. Clementson:*

Bennett vs. Harms and another.

The inchoate right of dower is nothing more than a mere expectancy before it is consummated by the husband's death. Tyler on Inf. & Cov. (1st ed.), 515; *Moore v. Mayor*, 8 N. Y., 113. While it remains in mere expectancy, the legislature has full power to modify or abolish it. Cooley's Con. Lim., 360; *Hoskins v. Hutchings*, 37 Ind., 324; *Sturdevant v. Norris*, 30 Iowa, 65. It is not a right arising out of contract, or which is guarded by constitutional provisions. It is merely an incident of the marriage relation, resulting from wedlock by the operation of existing laws at the time of the husband's death. 1 Washb. on R. P., 151; *Ware v. Owens*, 42 Ala., 212.

CASSODAY, J. ˙ The claim for a homestead was abandoned upon the argument, for the reason that the premises had wholly ceased to be occupied as such prior to the conveyance. So the view we have taken of this case renders it unnecessary to determine whether the court acquired jurisdiction to render the decree of divorce. Just how far a court would be authorized to go in presuming jurisdiction in such a case, is too important to be determined until it becomes absolutely necessary. For the purposes of this case, therefore, and without any intimation on the subject, we shall assume that *Mrs. Bennett* remained the lawful wife of John Bennett up to the time of his death, and since has been his widow. But at the time of the death of John Bennett neither he nor *Mary Bennett* was a resident of Wisconsin. Section 2159, R. S., provides that "the widow of every deceased person shall be entitled to a dower, or use during her natural life, of one-third part of all the lands whereof her husband was seized of an estate of inheritance at any time during the marriage, unless she is lawfully barred thereof, except as hereinafter provided." This is the same as section 1, ch. 89, R. S. 1858, with the qualifying words added. Section 2160, R. S., which went into effect three days prior to the death of John Bennett, provides that "a woman, being an alien, shall not on that account be barred

of her dower, but any woman residing out of this state shall be entitled to dower *only* of lands of her husband, being in this state, of which he died seized; and the same may be assigned to or recovered by her in like manner as if she and her husband had been residents of this state at the time of his death."

There is no substantial difference between this section and section 21, ch. 89, R. S. 1858, in force at the time of the conveyance and removal from the state in question, except the insertion of the word "only" in italics. Section 2166, R. S. (section 7, ch. 89, R. S. 1858), provides for the admeasurement of dower in cases where lands have been aliened "by the husband in his lifetime." By construing these sections together, it is very clear that the legislature intended to secure to the widow a dower right in lands conveyed by the husband without her signature, as well as lands not conveyed at all, except that widows residing out of the state are only to have dower in such lands as are in the state, and of which the husband "died seized." This construction seems to be virtually conceded by counsel; but it is urged, with some plausibility, "that by the marriage contract she became possessed of an interest in his real estate which he was or might become seized of during coverture, and the husband, by no act of his own, could divest her of her right of dower." In support of that theory, counsel cite the statement of RYAN, C. J., in *Godfrey v. Thornton*, 46 Wis., 683, that "the husband cannot, by his own act, divest his wife's right of dower, because it is an estate." The controlling facts present in this case were not present in that, and hence it cannot be regarded as an adjudication upon the question here presented. Undoubtedly the quotation is correct in all cases where the statute purports to secure dower to the widow; but the question here presented is, whether this is such a case.

In *Sutliff v. Forgey*, 1 Cow., 95, WOODWORTH, J., speaking for the court, said: "It is well settled that if a woman alien

marry a subject, she shall not be endowed, because, by the policy of the common law, all aliens are disabled from acquiring a freehold.". See, also, *Mick v. Mick*, 10 Wend., 380; *Priest v. Cummings*, 16 Wend., 617; *Connolly v. Smith*, 21 Wend., 59. Thus, in *Currin v. Finn*, 3 Denio, 229, it was "held that an alien widow, whose husband, being a citizen, purchased lands during their coverture in 1833, and died in 1838, was not entitled to dower, within the principle of *Sutliff v. Forgey*," *supra*. It was probably this view of the common law which induced the legislature to enact, as above, that "a woman, being an *alien*, shall not on that account be barred of her dower," etc. In *Pratt v. Tefft*, 14 Mich., 191, under statutes substantially like ours before the revision, it was, among other things, in substance held, that "a woman residing out of this state at the time of her husband's death is not entitled to dower of lands lying within this state, of which he had been seized, but which he had conveyed without her joining in the deed. The non-residence intended by this statute is at the time of the husband's death, and not at the time of the alienation of the land. The clause 'of which her husband died seized,' although affirmative in form, could have no affirmative effect whatever, for the reason that any disability of alienage or non-residence was already fully removed by the same statute. The only effect it can have is by the negative implication 'which results from it, and which is a necessary one, and as much a part of the statute as if it had been expressed."

Is this construction of the statute correct? Is the law which was in force at the time of the death of the husband, or at the time of the conveyance, to control? If the law in force at the time of the death of the husband is to control, then, even if the affirmative form of the statute, as it existed prior to the revision, were not to be construed as having a negative effect by implication, as in the Michigan case, yet, by the insertion of the word "only" in the revision, which went into effect

three days prior to the death of John Bennett, the section thereby became prohibitory, and is applicable here. Are we to look at the state of the law as it was at the time of the death, or the time of the conveyance?

In *Johnston v. Vandyke*, 6 McLean, 440, 441, McLEAN, J., said that "marriage without seizin would not create this right, nor would seizin without marriage create it. Both these must concur to give the incipient right to dower. But still it is not only an inchoate right, but contingent. It depends upon the death of the husband. If he survive his wife, she has no right transmissible to her heirs, nor during the life of her husband can she give it any form of property to her advantage; nor even after the death of her husband can she convey her dower until it shall be assigned to her. It is true, the statute gives to the wife an interest in the land of her husband on the contingency that she shall survive him, and of which no act of the husband can divest her. But still it is not, in a proper sense, a vested right. So long as the husband shall live, it is only a right in legal contemplation, depending upon the good conduct of the wife and the death of the husband. Until the death of the husband, the right, if it may be called a right, is shadowy and fictitious, and, like all rights which are contingent, may never become vested. . . . No objection is made to this law in regard to subsequent rights of dower; but it is earnestly contended it cannot operate in any case where marriage and seizin occurred before the law was passed."

In *Ligare v. Semple*, 32 Mich., 438, it was held that "a wife who is a non-resident of the state at the time the husband makes an absolute conveyance of lands, divesting himself entirely of his seizin and estate, has no right of dower under the statutes of this state in the lands so conveyed."

In *Barbour v. Barbour*, 46 Me., 9, it was held that "the wife has no vested right of any kind to dower in the estate of her husband before his decease; and, until then, her right may be modified, changed or abolished by the legislature."

To the same effect, *Magee v. Young*, 40 Miss., 164; *Lucas v. Sawyer*, 17 Iowa, 517; *Price v. Johnston*, 4 Yeates (Pa.), 526; *Moore v. New York*, 4 Sandf. S. C., 456; *S. C.* affirmed, 8 N. Y., 110; *Hammond v. Pennock*, 61 N. Y., 158; *Noel v. Ewing*, 9 Ind., 37; *Taylor v. Sample*, 51 Ind., 423. In *Ware v. Owens*, 42 Ala., 212, it was held that "the widow's right of dower is governed by the law which was in force at the time of the husband's death, and not that which was in force at the time of marriage, or may have been during its continuance."

We are aware that in *O'Ferrall v. Simplot*, 4 Iowa, 400, it was held that "the ordinance of 1787, with subsequent acts, made the law of dower one of the fundamental laws of the territory of Iowa," and that "where the husband alone conveys real estate, the dower of the wife, upon his death, is to be governed by the law in force at the time of making the conveyance by the husband, and not by that in force at the time of his decease." But the ordinance of 1787 contains this clause: "And this law relative to descent and dower shall remain in full force until altered by the legislature of the district." Besides, the case of *Lucas v. Sawyer*, *supra*, in the same court, seems to concede legislative control over the inchoate right of dower.

The Ohio courts have more than once construed that ordinance in harmony with the current of authorities. *Betts v. Wise*, 11 Ohio, 219; *Ruffner v. McLenan*, 16 Ohio, 654, 656; *Weaver v. Gregg*, 6 Ohio St., 547. We are also aware that in *Leary v. Laflin*, 101 Mass., 334, the general doctrine of the cases above cited seems to be doubted.

It would seem to follow from the weight of authority, that while the right of dower remains inchoate — a mere expectancy, — and until it becomes consummated by the husband's death, it is entirely under the legislative control.

Does the fact that the statute in question discriminates against non-resident widows render it obnoxious to any constitutional inhibition? Section 15, art. I of our state constitu-

tion, provides that "no distinction shall ever be made by law between resident aliens and citizens in reference to the possession, enjoyment or descent of property." By implication, it would seem that such "distinction" may be made between "residents" and non-residents who are not citizens; and hence, under this clause, it would seem that the legislature had the authority to discriminate against non-resident widows by the statute in question, unless it should be held, as urged by counsel, that this statute is in conflict with the constitution of the United States. Counsel urge that the statute in question is in conflict with section 2, art. IV, Const. U. S., which provides that "the citizens of each state shall be entitled to all the privileges and immunities of citizens in the several states." Possibly it might be claimed, also, that the statute in question is in conflict with the provision of section 10, art. I, which is in effect that "no state shall . . . pass any . . . law impairing the obligation of contracts."

In *Johnston v. Vandyke, supra,* McLean, J., said: "There is nothing in the constitution of the United States which prohibits a state from passing a retrospective law." 6 McLean, 441. In *Noel v. Ewing,* 9 Ind., 37, under a statute which gave an interest in fee in lieu of dower, it was held that "the statute is not retrospective — death being the future event, upon the occurrence of which it takes effect; nor does it impair the obligation of contracts. Marriage is not simply a contract, but a public institution, nor reserved by any constitutional provision from legislative control; and all rights in property growing out of the marriage relation are alike subject to regulation by the legislative power." *Taylor v. Sample,* 51 Ind., 425; *Thurber v. Townsend,* 22 N. Y., 517. In *Conner v. Elliott,* 18 How. (U. S.), 591, under a law of Louisiana discriminating in favor of women contracting marriage within that state, or contracting marriage out of the state and afterwards going there to live, and which was claimed to be in conflict with section 2, art. IV., *supra,* Curtis, J., giving the

opinion of the court, said: "According to the express words and clear meaning of this clause, no privileges are secured by it except those which belong to citizenship. Rights attached by the law to contracts by reason of the place where such contracts are made or executed, wholly irrespective of the citizenship of the parties to those contracts, cannot be deemed privileges of a citizen, within the meaning of the constitution. Of that character are the rights now in question. They are incidents ingrafted by the law of the state on the contract of marriage. . . . Whether persons contracting marriage in Louisiana are citizens of that or some other state, or aliens, the law equally applies to their contract; and so, whether persons married and domiciled elsewhere be or be not citizens or aliens, the law fails to regulate their rights. The law does not discriminate between citizens of the state and other persons; it discriminates between contracts only. Such discrimination has no connection with the clause of the constitution now in question." Pages 593, 594.

In speaking of tenancy by the curtesy and tenancy in dower, Mr. Cooley says: " In neither of these cases does the marriage alone give a vested right. It gives only a capacity to acquire a right." Cooley's Const. Lim., 361. Hence he holds that while such "interest remains in expectancy merely — that is to say, until it becomes initiate,— the legislature must have full right to modify or even to abolish it." Id.

The cases of *Van Buren v. Downing*, 41 Wis., 126, and *Welton v. Missouri*, 91 U. S., 275, in relation to traveling salesmen, cited by counsel, are wholly inapplicable to the case at bar, for reasons already made apparent.

We therefore hold that, (1) The right of dower in lands within this state, while it remains inchoate — a mere expectancy,— and until it becomes consummated by the husband's death, is under the absolute control of the state legislature, subject to the limitation that there can be no distinction " between resident aliens and citizens;" but this does not prevent discrimi-

nation against those who are neither citizens nor residents, and such discrimination is not in conflict with the clause of the constitution of the United States against impairing the obligation of contracts, nor the clause preserving the privileges and immunities of citizens in the several states, and hence the statute of this state making such discrimination is valid.   (2). The non-residence intended by this statute is at the time of the death of the husband, and not at the time of the conveyance of the land.   (3) Prior to the late revision, the discriminating clause was affirmative in form, but by implication it must be construed to have a negative effect, and the. insertion of the word "only" in the revision has made no essential change in the meaning.   (4) A woman who is neither a citizen nor resident of this state, at the time of her husband's death, is not entitled to dower in lands within this state, not being a homestead, which he conveyed during their marriage without her signature.

·*By the Court.*— The judgment of the circuit court is affirmed.