MARTHA A. BUFFINGTON v. WILLIAM S. GROSVENOR.
—SAME v. JOHN G. SEARS.

1. BILL OF RIGHTS — *Citizens—Aliens.* The word "citizens," as used in ₰ 17 of the bill of rights prior to the amendment of 1888, meant citizens of Kansas; and the word "aliens," as there used, meant persons born out of the United States and not naturalized.

2. CONSTITUTIONAL LAW — *Right to Dower.* The statute which provides that the widow shall not be entitled to an interest in lands conveyed by the husband when the wife, at the time of the conveyance, was a non-resident of the state, is not repugnant to ₰ 2 of article 4 or the fourteenth amendment to the constitution of the United States.

*Error from Kingman District Court.*

THE facts are substantially stated in the opinion. At the December term, 1890, judgments in two cases against the plaintiff, *Buffington,* who comes to this court.

*Hallowell, Hume & Gordon,* for plaintiff in error.

*A. D. Walker,* and *Hayden & Hayden,* for plaintiff in error, and as *amici curiæ.*

*John E. Lydecker,* and *Douthitt, Jones & Mason,* for defendants in error.

The opinion of the court was delivered by

JOHNSTON, J.: Martha A. Buffington brought two actions in the district court of Kingman county, one against William S. Grosvenor and the other against John G. Sears, to recover from each one-half of certain real property situate in Kingman county. She was unsuccessful in each case, and is here complaining of the judgments that were given. The material facts of the cases are alike, and as they present but one question, they may be disposed of in a single opinion. Martha A. Buffington became the wife of Pierce Buffington in 1865, and continued in that relation until the time of his death, in 1884. He removed to Kansas five or six years before his death, and shortly after coming here he acquired the absolute legal title to the property in controversy. Afterward, he conveyed the property by warranty deeds to certain grantees, and the defendants, by subsequent conveyances, have acquired all the title obtained by such grantees. Martha A. Buffington did not join her husband in conveying the property, and has never executed a conveyance of the same to anyone, but she was never a resident or citizen of Kansas, and was never in the state prior to the death of husband. She now claims to be entitled to a one-half interest in the real estate of her husband of which she had made no conveyance; but the trial court held, under the proviso of §8 of the act concerning descents and distributions, that, as she had not been a resident of Kansas, she never had any interest in the land conveyed, and her signature or conveyance was unnecessary to a complete transfer of the land by her husband. The section referred to reads as follows:

"One-half in value of all the real estate in which the hus-

band, at any time during the marriage, had a legal or equitable interest, which has not been sold on execution or other judicial sale, and not necessary for the payment of debts, and of which the wife has made no conveyance, shall, under the direction of the probate court, be set apart by the executor as her property in fee-simple upon the death of the husband, if she survives him: *Provided,* That the wife shall not be entitled to any interest, under the provisions of this section, in any land to which the husband has made a conveyance when the wife, at the time of the conveyance, is not or never has been a resident of this state. Continuous cohabitation as husband and wife is presumptive evidence of marriage, for the purpose of giving the right aforesaid." (Gen. Stat. of 1889, ¶ 2599.)

The plaintiff's contention is, that the proviso of the section violates both the state and federal constitutions, in that it discriminates against the citizens of other states and aliens. It is first contended that the proviso falls within the inhibition of § 17 of the bill of rights, which at the date of the conveyance of the land in controversy by Pierce Buffington read as follows: "No distinction shall ever be made between citizens and aliens in reference to the purchase, enjoyment or descent of property." Does the proviso mentioned make "a distinction between citizens and aliens in reference to the purchase, enjoyment or descent of property?" We are inclined to think that it is a regulation of the manner of transferring property within the state, instead of a restriction upon its descent. However, that question is immaterial in this case, so far as § 17 of the bill of rights is concerned. In no event can it be said that there is a distinction between citizens and aliens in the present case, for it does not appear that the plaintiff is an alien within the proper meaning of that term. It is alleged by plaintiff, and conceded on the other side, that she is a citizen of the United States. The wife of a citizen of Kansas, who resides in another state, cannot be regarded as an alien.

Citizen — who is. Webster defines the word as, "One born out of the jurisdiction of the United States and not naturalized," and Bouvier gives a like definition. Anderson's Dictionary of Law defines an alien to be, "One born in a

strange country, under obedience to a strange prince, or out of the liegance of the king." The amendment to this constitutional provision, which was adopted in 1888,, shows that that is the sense in which it is used in our constitution. Section 17 of the bill of rights, as amended, reads as follows: "No distinction shall ever be made between citizens of the state of Kansas and the citizens of other states and territories of the United States in reference to the purchase, enjoyment or descent of property. The rights of aliens in reference to the purchase, enjoyment or descent of property may be regulated by law." Before this amendment was adopted, citizens and aliens stood upon an equality with reference to the purchase, enjoyment and descent of real property, but by the amendment the people ordained that the restriction upon the legislature should be removed, and authorized such discriminating regulations against aliens in this respect as might be deemed wise. The use of the term "alien" in the amendment leaves no doubt of the sense in which the word is used, and furnishes an argument that it was used in the same sense in the original provision.

We agree with counsel for plaintiff that the term "citizen," as used in the original provision, refers to citizens of the state of Kansas. Counsel who filed a brief by the permission of the court as *amicus curiæ* contend, that the term includes all citizens of the United States, but we are not inclined to agree with that view. We conclude, then, that §17 of the bill of rights had no application to this case.

Alien — who is.

It is next contended that the proviso is repugnant to that provision of the federal constitution which ordains that "the citizens of each state shall be entitled to all the privileges and immunities of the several states," and also violative of a like limitation in the fourteenth amendment. We think the proviso is not in conflict with either of these provisions. It makes no discrimination against the citizens of other states in respect to any of the privileges or immunities of general citizenship. The proviso, in connection with other statutes, furnishes a rule regulating the manner of the transfer and transmission of real

property. Where a person owns the absolute title to land in Kansas, and his wife is a resident of the state, she must join in the conveyance; but when she is not a resident of Kansas, and therefore not subject to its laws, her signature and conveyance are unnecessary, and the husband alone may convey a good title. It is competent for the legislature of each state to declare the mode and manner by which real property situate within the state may be transferred by the husband or by the husband and wife, or by a judgment and process of court, so as to divest the husband or husband and wife of all estate or interest therein, and also to provide for the distribution of and the right of succession to the estate of deceased persons.

"The power of the state to regulate the tenure of real property within her limits, and the modes of its acquisition and transfer, and the rules of its descent, and the extent to which a testamentary disposition of it may be exercised by its owners, is undoubted. It is an established principle of law everywhere recognized, arising from the necessity of the case, that the disposition of immovable property, whether by deed, descent or any other mode, is exclusively subject to the government within whose jurisdiction the property is situated." (*United States v. Fox*, 94 U. S. 315.)

It is urged by the plaintiff that the wife is an heir, and as such is entitled to inherit one-half of her deceased husband's property; but that the proviso discriminates against widows who reside outside of the state, and deprives them of the right which is accorded to a resident widow. The wife, strictly speaking, is not an heir of the husband, although she is generally spoken of as such; but still, if she is regarded as an heir, the non-resident widow is not deprived of any "privilege or immunity." Under our statute, the property of the husband belongs exclusively to him, as the wife's property is exclusively her own. Neither has any vested interest or control over the property of the other by virtue of the marriage relation. The wife has no estate in the land of the husband. It is a mere possibility, depending upon the death of the husband, or whether he has divested himself of the title prior to his death. If he survives her, no interest is

taken by nor transmitted to her heirs. If she survives him, but before his death he conveys the land, or it has been sold on execution or other judicial sale, nothing remains for her to take, and she has been deprived of no right. If there was an attempt to convey by the husband alone, when his wife was a resident, the title would remain in her, because the manner of conveying land prescribed by statute had not been pursued; and if there was no judicial sale of the land and it was not necessary for the payment of debts, a one-half interest would descend to her. In such a case, if she was a non-resident of the state, the conveyance by the husband alone would, under the rules prescribed for conveying, be sufficient to divest the title, and hence there would be nothing for her to inherit. It therefore appears that, if the conveyance is made in the manner prescribed by statute, there is nothing for either the resident or non-resident widow to inherit. There is really no discrimination between the resident and non-resident widow, for each takes one-half of all the real property which her husband owned at the time of his death. When the husband's land has been conveyed in accordance with law during his life, there is no descent to either, for there is nothing to descend. For reasons that were deemed sufficient, the legislature made the signature and conveyance of the non-resident wife unnecessary. The fact that the wife did not accompany her husband to Kansas, or had abandoned him and gone to another state, and may or may not have obtained a divorce elsewhere, thus leaving the *status* of the parties in doubt, and making it difficult to obtain a perfect transfer of land in many cases, may have been deemed sufficient reason for prescribing this rule of conveyance. The statute was enacted shortly after the admission of the state, and when it was rapidly increasing in population through immigration from many of the eastern states and also foreign countries, many coming without their wives and families; and possibly the rule was adopted to avoid inconvenience and deception in the transfer of real property. The "immunities" and "privileges" referred to in the federal constitution would not in any

event include the claim made by the plaintiff. Those terms " mean that all citizens of the United States shall have the right to acquire property and hold it, and this property shall be protected and secured by the laws of the state in the same manner as the property of the citizens of the state is protected; that this property shall not be subject to any burdens or taxes not imposed on the property of citizens of the state." (3 Am. & Eng. Encyc. of Law, 253. See, also, the cases there cited, and *Corfield v. Coryell*, 4 Wash. C. C. 380; *McCready v. Virginia*, 94 U. S. 391.) According to these authorities, many rights and privileges may be granted by a state, depending to some extent upon the residence of those to whom they are granted, without infringing upon this provision of the constitution. The privilege of voting, of holding office, or of acting as an administrator of estates, may be withheld until after persons have resided within the state a reasonable period of time without violating the constitution; and it is not violated by allowing an attachment against the property of a non-resident debtor without an undertaking, although such process cannot be obtained against a resident without an undertaking. (*Head v. Daniels*, 38 Kas. 1; Cooley, Const. Lim. [6th ed.], 490.) These and many other distinctions do not fall within the privileges and immunities of general citizenship. In treating upon this question, Judge Cooley says:

"Although the precise meaning of 'privileges' and 'immunities' is not very clearly settled as yet, it appears to be conceded that the constitution secures in each state to the citizens of all the other states the right to remove to and carry on business therein; the right, by the usual modes, to acquire and hold property, and to protect and defend the same in the law; the right to the usual remedies for the collection of debts, and the enforcement of other personal rights; and the right to be exempt in property and person from taxes or burdens which the property or persons of citizens of the same state are not subject to. To this extent, at least, discriminations could not be made by state laws against them. But it is unquestionable that many other rights and privileges may be made, as they usually are, to depend upon actual residence, such as the right

to vote, to have the benefit of exemption laws, to take fish in the waters of the state, and the like." (Cooley, Const. Lim. [6th ed.], 490, also note on page 25.)

There are several adjudicated cases in other states sustaining a provision of statute substantially similar to the proviso in question.   In *Pratt v. Tefft*, 14 Mich. 191, it was decided that a woman residing out of the state at the time of her husband's death was not entitled to lands lying within the state, owned by him, but which had been conveyed without her joining in the deed.   Although the estate of dower has been abolished in Kansas, the contingent interest of the wife in the real property of the husband is similar to dower in its inchoate stage; at least, it is substantially similar, so far as the validity of such a provision as we are considering is concerned.

In *Ligare v. Semple*, 32 Mich. 438, it was again decided that—

"A wife who is a non-resident of the state at the time the husband makes an absolute conveyance of lands, divesting himself entirely of his seizin and estate, has no right of dower under the statutes of this state in lands so conveyed."

The supreme court of Nebráska held that "where a husband conveys lands in this state while his wife is a non-resident thereof, she has no dower interest in the land thus conveyed." (*Atkins v. Atkins*, 18 Neb. 474.)

In *Bennett v. Harms*, 51 Wis. 251, a like provision of the statute was under consideration, and the point was directly made that it conflicted with the constitution of the United States by discriminating against non-resident citizens, but the validity of the statute is sustained in an elaborate opinion.

A like question has been decided by the supreme court of the United States under a law of Louisiana, which discriminated in favor of women who contracted marriage within the state, or who contracted marriage out of the state and afterward went there to live, and it was claimed to be in conflict with the provision of the federal constitution that "the citizens of each state shall be entitled to all the privileges and

47 — 46 KAS.

immunities of citizens in the several states;" but it was ruled, Judge Curtis delivering the opinion, that such discrimination had no connection with that clause of the constitution. (*Connor v. Elliott*, 18 How. 591.)   Following these decisions, we conclude that the statute is not repugnant to the federal constitution; and if we are in error in this regard, the parties are entitled to have the decision reviewed in the supreme court of the United States.

<span style="float:left">2. Valid statute;<br>right to dower.</span>

We find no error in the record, and therefore the judgment of the district court will be affirmed.

All the Justices concurring.