BOEHMER and others, Appellants, vs. KALK, imp., Respondent.

*November 18—December 9, 1913.*

*Life insurance: Policy issued to husband for benefit of wife: Assignment by husband: Vested rights: Regulation of marriage relation: Constitutional· law: Statutes: Validity.*

1. The rule that one who insures his own life for the benefit of another and pays the premiums himself may at any time dispose of the policy or may will it away without consent of the beneficiary, was changed, so far as policies in favor of married

women are concerned, by ch. 376, Laws of 1891, which amended sec. 2347, R. S. 1878, so as to provide in substance that any such policy either assigned or made payable to a married woman or to a trustee for her benefit should be her sole and separate property, free from the control, disposition, or claims of her husband.

2. The right of a husband to sell, assign, and dispose of a policy of insurance upon his own life for the benefit of his wife, issued prior to passage of ch. 376, Laws of 1891, and upon which he paid the premiums, was a valuable property right and was fully vested; and in so far as said act of 1891 attempted to deprive him of that right it is invalid.

3. The public has the right to control and regulate the marriage relation and the property rights of the parties thereto by such reasonable and appropriate regulations as do not unnecessarily interfere with those rights of person and property which both state and federal constitutions were framed to protect; but the interests or welfare of the public do not make necessary any such considerable extension of the police power as would be involved in holding that a vested property right, such as the right of selling, assigning, or willing a policy of insurance, can be taken away from the husband by legislative act.

APPEAL from a judgment of the circuit court for Milwaukee county: F. C. ESCHWEILER, Circuit Judge. *Affirmed.*

W. O. *Thomas,* for the appellants.

For the respondent there was a brief by *George L. Blum,* attorney, and *V. W. James,* of counsel, and oral argument by *Mr. James.*

WINSLOW, C. J. The controversy here is as to the ownership of the moneys due on a life insurance policy issued to John Boehmer in June, 1868, "for the sole use and benefit of *Clara Boehmer,* his wife, and their children." In October, 1898, John Boehmer assigned the policy to the respondent, *Anna M. Kalk* (his daughter by a former marriage). He died in 1912, and the contest is between the plaintiffs, who are the beneficiaries named in the policy, and the defendant, who claims as assignee.

Since a very early day it has been held in this state that

one who insures his own life for the benefit of another and pays the premiums himself may at any time dispose of the policy, or may will it away without consent of the beneficiary. See *Clark v. Durand,* 12 Wis. 223, and subsequent cases, the most recent of which is *Armstrong v. Blanchard,* 150 Wis. 31, 136 N. W. 145. This rule was changed so far as policies in favor of married women are concerned by ch. 376 of the Laws of 1891, which amended sec. 2347 of the Revised Statutes of 1878 by adding thereto in substance clauses providing that any such policy either assigned to or made payable to a married woman or to a trustee for her benefit should "be the sole and separate property of such married woman," free from the "control, disposition or claims of her husband." This act further provided that its provisions should "apply to all insurance on lives effected before" its passage.

The intention to make this change in the statute apply to existing policies is plain, and the question arising here is whether it is competent for the legislature to make it so apply.

There can be no doubt that when this policy was issued and the premiums thereon were paid by the insured it became his property. The principle of law which had long previously been adopted in this state giving to the husband the absolute power of disposition and control of such policies was, upon very familiar principles, written into the policy in legal effect, and became a part thereof. It was a valuable property right and was fully vested. The general rule is that such a right cannot be taken from one person and transferred to another by the legislature. Such a transfer offends against both state and federal constitutional provisions. *Osborn v. Hart,* 24 Wis. 89; *Culbertson v. Coleman,* 47 Wis. 193, 2 N. W. 124; *Wis. W. Co. v Winans,* 85 Wis. 26, 54 N. W. 1003.

Both parties claim that this court has expressly or impliedly passed upon the question of the application of this

law to existing contracts, but we do not think it can be held that the question has been in any sense authoritatively decided.

The case of *Ellison v. Straw,* 116 Wis. 207, 92 N. W. 1094, was the first case in which the question of the effect of the amendment of 1891 was touched upon. In this case the policies were issued prior to 1891, and were for the benefit of the wife in case she survived her husband, otherwise for the benefit of the husband's estate. A paid-up life policy, payable to the same beneficiaries, was issued in place of one of the original policies in the year 1900, and the other policy became a paid-up life policy during the same year. The question in the case was whether judgment creditors of the husband and wife could reach the policies in a creditors' action, and subject them to the satisfaction of their judgments. In neither brief was the change made in the law by ch. 376 of the Laws of 1891 noticed. Both parties seemed to consider the amended section as applicable to the case, though they differed as to its effect. The court treated it in like manner and proceeded to apply it to the case, holding not only that such a policy could not be reached by her creditors or her husband's creditors, but also that neither she nor her husband could assign the same.

In *Canterbury v. Northwestern Mut. L. Ins. Co.* 124 Wis. 169, 102 N. W. 1096, the question whether the husband and wife together could, after the passage of the law of 1891, assign a policy of this kind issued prior to the passage of that law, was squarely presented. In this case the court came to the conclusion that such a policy could be assigned by husband and wife prior to the act of 1891, and that, assuming the act of 1891 to be applicable to policies issued before its passage, still that act had not affected the right of assignment by the husband and wife acting together, and the holding to the contrary in the *Ellison Case* was withdrawn. In

*Perkinson v. Clarke,* 135 Wis. 584, 116 N. W. 229, the stat-
ute was referred to in the opinion by Mr. Justice BASHFORD
as applying to all insurance theretofore effected, but the re-
mark was not necessary to the decision, because the question
to which it was cited as applicable had been already decided
in the immediately preceding sentence on another ground.
It also appears upon examination of the briefs in the case
that the statute in question was not referred to by either
party or cited as bearing on the case.   It is certain that in
no case where the proposition was squarely raised and ar-
gued has this court passed upon the question now before us,
namely, the question whether the amendment of 1891 can
have any effect on the assignability of insurance policies
under which married women had become beneficiaries prior
to the passage of the amendment.

As has been previously said in this opinion, it seems very
clear that the right of the husband to sell, assign, and dispose
of such a policy which existed prior to the act of 1891 was a
valuable property right, which became fully vested in the
husband when the policy was issued and the premiums were
paid by him.   Both state and federal constitutions protect
vested property rights from legislative invasion, except
where, in the proper exercise of the police power and in order
to preserve and protect the public health, morals, safety, or
welfare, it becomes necessary to interfere with and affect
property rights, but such interference cannot extend beyond
those measures or acts which are appropriate and reasonably
necessary for the accomplishment of the purpose.   *Chicago,
M. & St. P. R. Co. v. Milwaukee,* 97 Wis. 418, 72 N. W.
1118; *State ex rel. Winkler v. Benzenberg,* 101 Wis. 172, 76
N. W. 345; *State v. Redmon,* 134 Wis. 89, 114 N. W. 137.

The marriage relation is one of the most important of those
fundamental social facts or relations upon which both civi-
lized society and government rest.   The interest of the pub-

lic in its preservation and in the fair and equitable enjoyment and control of property rights by the husband and wife respectively, to the end that the relation may be permanent and satisfactory, is very great. Consequently there can be no doubt of the right of the public to control and regulate both the relationship itself and the property rights of the parties to the relation, by such reasonable and appropriate regulations as do not unnecessarily interfere with those rights of person and property which both state and federal constitutions were framed to protect. *Baker's Ex'rs v. Kilgore,* 145 U. S. 487, 12 Sup. Ct. 943; *Niles v. Hall,* 64 Vt. 453, 25 Atl. 479; *Bennett v. Harms,* 51 Wis. 251, 8 N. W. 222.

The regulations deemed necessary to accomplish these results have been very numerous in recent years, and the common-law rights of the husband in his wife's property and earnings have been very greatly modified and in many states abolished by the various Married Women's Acts which have been placed upon the statute books. These regulations, so far as they relate to marriages existing prior to their enactment, have been sustained by the courts with practical uniformity in so far as they affect merely inchoate rights, such as inchoate rights of dower or curtesy, the husband's unexercised right to reduce the wife's personal estate to his possession and control, and the right to further profits of property belonging to the wife. *Bennett v. Harms, supra; Percy v. Cockrill,* 53 Fed. 872; *Baker's Ex'rs v. Kilgore, supra;* Spencer, Dom. Rel. secs. 195, 203, 236. In some jurisdictions, however, the right of the husband to reduce his wife's personalty to his possession has been held to be a vested right and not subject to change by the legislature, even though yet unexercised. *Westervelt v. Gregg,* 12 N. Y. 202.

It may be said that the decisions are practically unanimous to the effect that while the legislature may rightfully take away mere inchoate or expectant interests of the hus-

band and may also exclude him from acquiring rights in property subsequently accruing to his wife, notwithstanding the marriage exists when the statute is passed, it cannot constitutionally take away rights of property already *vested* in him by virtue of the marriage. Spencer, Dom. Rel. sec. 236; 8 Cyc. 908; Cooley, Const. Lim. (7th ed.) 513 *et seq.*

This principle is so firmly entrenched in the decisions that it seems to be not open to doubt or question.

We have discovered no good reasons for holding that the interests or welfare of the public make necessary so considerable an extension of the police power as would be involved in holding that a vested property right, such as the right of selling, assigning, or willing a policy of insurance, can be taken away from the husband by legislative act. These views are decisive of the case.

Other questions are argued and have been considered, but it is not deemed necessary to discuss them.

*By the Court.*—Judgment affirmed.