NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY vs. ADAMS, Appellant, and another, Respondent.

*November 18, 1913—January 13, 1914.*

**Life insurance: Assignment of policy: Vested rights: Husband and wife.**

1. The vested property right which a husband had in a policy of insurance issued prior to the enactment of ch. 376, Laws of 1891, upon his own life for the benefit of his wife, could not be taken away by that statute.

2. Where such a policy was a Wisconsin contract, governed as to its validity and effect by the laws of Wisconsin, an assignment thereof executed by the husband while both he and the assignee, though domiciled elsewhere, were temporarily in Minnesota, was not invalid merely because in that state the law is settled (contrary to the Wisconsin rule) that a life insurance policy belongs to the beneficiary alone and cannot be assigned by the assured. The state of Minnesota has not forbidden a person to assign a policy which, under the *lex loci contractus*, is his property.

APPEAL from a judgment of the circuit court for Milwaukee county: J. C. LUDWIG, Circuit Judge. *Reversed.*

This is an action of interpleader. The question involved is as to the ownership of the proceeds of a life insurance policy on the life of one Foster D. Adams. The policy was issued June 21, 1881, and named as beneficiary "his wife, *Ida M. Adams.*" The insured then lived in the territory of Dakota, and the policy stated on its face that it was a contract made and to be performed in the state of Wisconsin. In November, 1893, a judgment of divorce was rendered by the district court of Hennepin county, Minnesota, dissolving the bonds of matrimony between Foster D. Adams and *Ida M. Adams,* and requiring Foster D. Adams to pay $1,250 in full settlement of all pecuniary obligations. *Ida M. Adams* thereafter married Charles F. Lincoln, and is the respondent in this action.

Foster D. Adams died at Minneapolis, Minnesota, June 22, 1911. Two or three days before his death he executed to the appellant, *William E. Adams,* an assignment of the pol- icy and delivered the same to the appellant, together with the policy itself. The insurance company brought the money into court, and the trial court adjudged that it be paid to the respondent, *Ida M. Lincoln,* from which judgment *William E. Adams* appealed.

For the appellant there were briefs by *Bloodgood, Kemper & Bloodgood,* attorneys, and *Jackson B. Kemper,* of counsel, and oral argument by *Jackson B. Kemper.*

For the respondent there was a brief by *McClellan, Hensel & Guthrie* and *George H. Katz,* and oral argument by *Mr. F. F. McClellan* and *Mr. Katz.* They contended, *inter alia,* that the validity of the assignment is governed by the laws of Minnesota. The assignment is a separate contract from the policy. The insurance contract is silent as to what law shall govern the assignment, and consequently the validity of the assignment is governed by the law of the state where made. *Union Central L. Ins. Co. v. Woods,* 11 Ind. App. 335, 37 N. E. 180; *Lee v. Abdy,* L. R. 17 Q. B. D. 309; *Mutual L. Ins. Co. v. Allen,* 138 Mass. 24, 52 Am. Rep. 245; *Miller v. Campbell,* 140 N. Y. 460, 35 N. E. 651; *Brick v. Campbell,* 122 N. Y. 337, 25 N. E. 493; *Spencer v. Meyers,* 150 N. Y. 269, 44 N. E. 942; *Russell v. Grigsby,* 168 Fed. 577, 94 C. C. A. 61. By the law of Minnesota this assignment was void. *Wallace v. Mutual B. L. Ins. Co.* 97 Minn. 27, 106 N. W. 84; *Allis v. Ware,* 28 Minn. 166, 9 N. W. 666; *Birge v. Franklin,* 103 Minn. 482, 115 N. W. 278; *Ricker v. Char- ter Oak L. Ins. Co.* 27 Minn. 193, 6 N. W. 771.

Winslow, C. J. Two questions are raised in this case, viz.: (1) Was the husband's right to assign the policy taken away by ch. 376 of the Laws of 1891? and (2) Was the as- signment in question void because executed in Minnesota?

The first question is answered in the negative by the decision in the case of *Boehmer v.-Kalk, ante,* p. 156, 144 N. W. 182, and need not be further elaborated upon here.

The second question demands careful examination. The policy in question was issued at Milwaukee and was payable by its terms at Milwaukee. , Moreover it contained an express statement that it was a contract made and to be performed in the state of Wisconsin. There can be no doubt, therefore, that it was a Wisconsin contract, although both the insured and the beneficiary resided in Dakota. *Presbyterian M. Fund v. Thomas,* 126 Wis. 281, 105 N. W. 801. But it was assigned and delivered to the appellant in the state of Minnesota, and in that state the law is settled (contrary to the Wisconsin rule) that such a policy belongs to the beneficiary alone and cannot be assigned by the assured because he has no legal or equitable interest in it. *Birge v. Franklin,* 103 Minn. 482, 115 N. W. 278. The contention is that the assignment is void because executed in a state where the law does not recognize that the assured has any right to make such an assignment.

That the question is one involved in some difficulty must be admitted. That field of law which goes by the name of the conflict of laws is one of the most thorny and difficult fields to traverse. It is full of conflicting decisions, refined reasoning, and unsatisfactory results. Especially is this the case when the subject under consideration is a mere chose in action.

Approaching the question from the *a priori* standpoint, it would seem as if the laws of Minnesota could have no effect on the matter at all. The contract of insurance was from the beginning a Wisconsin contract and governed as to its validity and effect by the laws of Wisconsin. By those laws it became the property of the deceased when it was issued and remained his property notwithstanding the subsequent change of law in Wisconsin. *Boehmer v. Kalk, supra.* That

this vested property right could be divested or impaired even temporarily by the fact that the deceased was physically in Minnesota, whether for a long or short period of time, seems a proposition quite at variance with the principles usually applied to property and property rights; yet this is practically the position which the respondent must and does assume to sustain the judgment, and authorities are cited which seem at first glance to support it.

Before proceeding to consider these authorities it will be desirable to state the exact facts appearing in the record which have a bearing on the question. As before stated, the contract of insurance was purely a Wisconsin contract. At the time of its execution and delivery the insured and the beneficiary were residents of the territory of Dakota. In November, 1893, at the suit of the deceased, Foster D. Adams, a decree of divorce was granted by the district court of Hennepin county, Minnesota. This would seem to be *prima facie* proof that he then resided in that state. The assignment bears date February 11, 1908, at Omaha, Nebraska, and runs to his brother, the appellant, a resident of Deadwood, South Dakota. It was not delivered until about June 19, 1911, three days before the death of the insured and when both he and his brother were at the house of a sister in Minneapolis, Minnesota. , There is no finding as to the residence or domicile of the insured after the divorce in 1893. The evidence, however, shows without dispute that for some time prior to February, 1911 (for what length of time does not appear), the insured was manager of the southern division of the American Express Company and remained such manager until his death, with his headquarters at St. Louis, Missouri; that he was ill and not in active duty from February, 1911, until the time of his death in the following June; that during that absence he was at Los Angeles, California, for a part of the time and a part of the time at Monrovia, a suburb of Los Angeles. At this last named place his

sister (at whose home he died) and his brother, the appellant, were with him, and all three went to Minneapolis together a week or ten days before the death of the insured, and apparently in anticipation of that death.    During this time the insured telegraphed to St. Louis for his private papers, including this policy, and was apparently arranging his business affairs, and as part of that arrangement delivered the assignment and the policy to his brother, the appellant, who was still a resident of South Dakota, and who took the policy and assignment with him to that state after the death of the insured. The conclusion seems irresistible that the insured was not domiciled in nor a resident of Minnesota at the time of his death, but was there merely temporarily that he might have the care of his sister in his illness.    The case, therefore, is the case of the assignment of an insurance policy by an assignor domiciled in Missouri to an assignee domiciled in South Dakota, which was delivered while both assignor and assignee were temporarily in Minnesota.    The authorities, therefore, which hold that the validity and effect of an attempted assignment of an insurance policy in favor of a married woman is determined by the law of the domicile of the parties have no tendency to support the judgment because the beneficiary was no longer the wife of the insured and neither of the parties to this assignment was domiciled in Minnesota, and the case is barren of proof as to the state of the law on the subject either in Missouri or South Dakota.

The fundamental principle upon which the line of cases just referred to rests is the principle that any sovereign state may regulate the conduct of its own residents within its limits; that marriage is a status, and that the parties to that status, so far as their ability to contract is concerned, are subject to the regulations and disabilities imposed upon them by the laws of the state of their domicile.    *Freeman's Appeal,* 68 Conn. 533, 37 Atl. 420; *Colburn's Appeal,* 74 Conn. 463, 51

Atl. 139; *Mutual L. Ins. Co. v. Allen,* 138 Mass. 24; *Wilde v. Wilde,* 209 Mass. 205, 95 N. E. 295; *Spencer v. Myers,* 150 N. Y. 269, 44 N. E. 942; *Miller v. Campbell,* 140 N. Y. 457, 35 N. E. 651; *Union Cent. L. Ins. Co. v. Woods,* 11 Ind. App. 335, 37 N. E. 180, 39 N. E. 205; *Henry v. Thompson,* 78 N. J. Eq. 142, 78 Atl. 14; *Newcomb v. Mutual L. Ins. Co.* 18 Fed. Cas. 47.

The English case of *Lee v. Abdy,* L. R. 17 Q. B. D. 309, which is cited in many of the American cases, is a good illustration of the principle. In that case an English insurance company had insured the life of a married man, and the insured and his wife became thereafter permanently domiciled in Cape Colony, where by express legal enactment a husband could not legally assign a policy of insurance to his wife. Nevertheless while he and his wife were so domiciled he formally assigned the policy to her, and on his death she sued the company. It was held, in effect that the parties to the assignment were domiciled and made their contract of assignment in Cape Colony, and that the law of Cape Colony and not of England must determine the validity of that contract. Of similar tenor are the Canadian cases of *National T. Co. v. Hughes,* 14 Manitoba, 41, and *Toronto G. T. Co. v. Sewell,* 17 Ont. Rep. 442.

This power of a sovereign state to regulate the conduct of its own residents within its borders and to prescribe limitations or disabilities upon their liberty of contract is not in question here. The state of Minnesota has not attempted to do anything of that kind. It has not forbidden a husband to dispose of any property which by virtue of the *lex loci contractus* he may have in a life insurance policy. It has simply said that a husband has no property in a policy of the kind in suit where the interpretation and legal effect of the policy are governed by the law of Minnesota. In other words, it has said, if the policy in question were a Minnesota contract F. D. Adams could not assign it because he has no

property in it.    Here is no condemnation of the act of trans-
ferring property nor any declaration that such a transfer is
against public policy or good morals, but simply a construc-
tion of a certain form of contract and a declaration of the
legal effect thereof when it occurs in a contract which is prop-
erly to be construed and interpreted according to the law of
Minnesota.

Had it been specifically declared by the legislature of Min-
nesota that an assignment of such a policy by the husband
was against public policy and prohibited, or should not be
valid unless accompanied by certain formalities not present
in this case, we should have a different question here, a ques-
tion somewhat similar to the questions arising in *Russell v.
Grigsby,* 168 Fed. 577, and *Miller v. Manhattan L. Ins. Co.*
110 La. Ann. 652, 34 South. 723, but we have no such case.

It is sometimes said in the text-books and in the opinions
that an assignment of a policy is governed by the law of the
place where the assignment is made.    25 Cyc. 780.    This is
generally true in the sense that it is competent for the state
to prescribe formalities for the transfer within its borders of
a chose in action like the present, even though it be a con-
tract made in another state, and that these requirements
will generally be given effect.    It is true in the sense that
the *lex loci* may make a chose in action assignable which was
not assignable by the law existing where the contract was
made and is to be performed.

It is certainly true in the general sense that a contract
valid where made will be valid in another jurisdiction unless
contrary to good morals or the public policy of the other juris-
diction.    *Mowry v. Crocker,* 6 Wis. 326; *Smith v. C. & N.
W. R. Co.* 23 Wis. 267.

Were this an assignment of a policy whose meaning and
effect were subject to determination by the law of Minne-
sota, an assignment by the husband in Minnesota or else-
where would be worthless, not because it was unlawful but

because the husband has no interest to assign.    Being an assignment of a policy whose meaning and effect is to be determined by the law of Wisconsin, it is valid even though executed in Minnesota, because Minnesota has no law, either written or unwritten, which even attempts to prohibit a person from assigning a chose in action which belongs to him.

Rule 141 of Dicey's Conflict of Laws seems to be applicable and is as follows:

"An assignment of a movable which cannot be touched, *i. e.* of a debt, giving a good title thereto according to the *lex situs* of the debt (in so far as by analogy a *situs* can be attributed to a debt), is valid.    Provided that (1) the liabilities of the debtor are to be determined by the law governing the contract between him and the creditor, (2) the right to recover the debt is, as regards all matters of procedure, governed by the *lex fori.*"

The case of *Lebel v. Tucker,* L. R. 3 Q. B. Cas. 77, fully sustains this rule.    In that case a negotiable bill of exchange drawn, accepted, and payable in England was indorsed by the payee in France and an action brought by the indorsee against the acceptor in England.    The defense was that the indorsement was void because, though sufficient under the general law merchant, it lacked certain formalities required by the law of France, and it was held that the original contract could not be thus varied by the law of a foreign country through which it passes.    See *Kelly v. Selwyn,* [1905] L. R. 2 Ch. Div. 117; *In re Maudslay,* [1900] L. R. 1 Ch. Div. 602.

We have just held in another case that a law of this state cannot take away the property right which a husband has in a policy of this nature issued prior to the passage of the law. *Boehmer v. Kalk, ante,* p. 156, 144 N. W. 182.    Now in the present case it cannot be doubted that Foster D. Adams owned this policy at the time of its issuance in 1881 and thereafter so long as he was a resident of South Dakota. Could it be possible that his property right could be taken

from him and vested in his wife by a subsequent removal into the state of Minnesota? If so, then a decision of the supreme court of Minnesota which had no bearing or effect on the policy when issued could at a later period become effective to convey the property of the husband to the wife and thus accomplish what the legislature of Wisconsin is held to be unable to do.

*By the Court.*—Judgment reversed, and action remanded with directions to enter judgment for the appellant in accordance with this opinion.