EDWARD A. FREEMAN, TRUSTEE, APPEAL FROM COMMIS-
SIONERS.

First Judicial District, Hartford, January Term, 1897. ANDREWS, C. J.,
TORRANCE, FENN, BALDWIN and HAMERSLEY, Js.

The personal disabilities imposed upon married women by the common law,
as well as by the statutes of this State prior to 1877, precluded them
from making any contract as surety or guarantor for their husbands;
and this disability still applies to women married before 1877, unless
removed by mutual agreement as indicated by the statute then enacted.

Coverture creates a *status* involving certain relations between the woman
and the rest of the community, which, being determined by law, can-
not be varied by her acts or agreements.

A contract which a woman married and domiciled in this State has no legal
capacity to make here, cannot be made by her elsewhere through the
interposition of an agent whom she assumes to constitute for such pur-
pose in this State.

[Argued January 13th—decided February 23d, 1897.]

APPEAL from the doings of commissioners, in allowing a
claim of $28,070 against the estate of an insolvent debtor,
taken to the Superior Court in Hartford County and reserved
by that court, *George W. Wheeler, J.,* upon a finding of facts,
for the consideration and advice of this court. *Disallowance
of claim advised.*

The facts found were as follows: H. Drusilla Mitchell has
always resided in Bristol in this State. In 1857 she was
there married to George H. Mitchell, and they continued to
reside there until his death in 1896, and she resides there
still. He was a member of the mercantile firm of Morse,
Mitchell & Williams, located at Chicago; and there the other
two partners lived. On February 20th, 1891, the firm being
indebted to the First National Bank of Chicago over $20,000,
upon their notes, the following paper was executed to said
bank at Chicago, by the firm and each of its members:—

" We hereby request the First National Bank of Chicago
to give and continue to Morse, Mitchell & Williams credit
as they may desire from time to time, and in consideration
of all and any such credit given we hereby guarantee any

and all indebtedness now due, or which may hereafter become due, from them to said bank, to the extent of thirty thousand dollars, and waive notice of the acceptance of this guaranty and of any and all indebtedness at any time covered by the same. This guaranty shall continue until written notice from us of the discontinuance thereof shall be received by said The First National Bank of Chicago.

　　　　　　　" MORSE, MITCHELL & WILLIAMS.
　　　　　　　" FRANCIS E. MORSE.
　　　　　　　" FREDERICK C. WILLIAMS.
　　　　　　　" G. H. MITCHELL.
" Chicago, Ill., February 20, 1891."

Said paper was prepared by the bank, which had agreed with said firm to continue the line of credits to it, upon the execution of said paper by said firm and its individual members, and by Mrs. H. Drusilla Mitchell, then at her home in said Bristol. George H. Mitchell thereupon took said paper and brought it with him to his residence at Forestville in the town of Bristol, and there procured his wife, H. Drusilla Mitchell, to sign the same, and it was thereafter by him enclosed, addressed and sent by mail to said Morse in Chicago, who delivered it to said bank. Said bank continued to extend credit to Morse, Mitchell & Williams, until the firm became insolvent and made an assignment for the benefit of its creditors on July 30th, 1893. At the time of such insolvency and assignment, said bank held and owned the notes of Morse, Mitchell & Williams—renewals of unpaid portions of said first mentioned notes—for $16,500, and also sundry other notes of third parties endorsed by said firm. All these notes were payable at Chicago, and they have never been paid.

The bank, on December 26th, 1893, prepared the following draft of a letter :—

　　　　　　　" Chicago, Ill., December 26th, 1893.
" J. H. WELCH, Esq., Executor of the will of E. N. Welch, deceased, Forestville, Conn.

" Dear Sir :—I desire to notify you that I have assigned,

set over, and transferred to the First National Bank of Chicago, Ill., all my right, title, and interest in and to so much of the estate of my late father, E. N. Welch, deceased, as has not been distributed, and you will, therefore, account for and pay over to said First National Bank of Chicago, instead of to me, all money and other property coming to me or to which I may be entitled, at any time hereafter, from said estate of my deceased father.

"Please note at the foot hereof, for the satisfaction and security of said bank, that you will undertake to do this, and in case you should cease to be executor of the estate, otherwise than by death, you would promptly give notice of the fact to said bank, in order that it might give express notice of this assignment to your successor in the trust.

"Yours truly."

This draft the bank sent to George H. Mitchell at Forestville, to procure the signature of his wife, said H. Drusilla Mitchell, thereto. Said George H. Mitchell procured said H. Drusilla Mitchell to sign said letter at her home in Bristol, and transmitted the same, by mail, to said bank at Chicago, on January 23d, 1894, first procuring the following note at the foot of it, from the executor: "I take notice of the foregoing and will comply therewith.

"J. H. Welch, Executor."

Mrs. Mitchell executed no other paper or assignment to said bank of her interest in the estate of E. N. Welch, deceased. Upon the receipt of the letter by the bank, said bank executed and transmitted to George H. Mitchell, by mail, the following paper:—

"December 26th, 1893.

"Received of H. Drusilla Mitchell an assignment of all her right, title, and interest in the undistributed estate of her late father, E. N. Welch, deceased, the same being so received in pledge to secure the payment of her indebtedness to the undersigned, its successors or assigns, upon her guaranty of certain notes made or indorsed by Morse, Mitchell & Williams of Chicago, amounting to $26,000, more or less.

"In consideration of security pledged as aforesaid, the undersigned undertakes and promises to surrender and re-assign the same, or so much thereof as shall not have been applied on said indebtedness, at any time on demand after payment in full of the indebtedness aforesaid, and not to enforce or demand payment of said indebtedness from said H. Drusilla Mitchell, her heirs, executors, or administrators prior to January 1st, 1895, except from the interest or property assigned as security aforesaid.

　　　　　　" THE FIRST NATIONAL BANK OF CHICAGO.
　　　　　　　　　　" By L. J. GAGE, *Pt.*"

This paper was never delivered by said George H. Mitchell to said H. Drusilla Mitchell, or its existence made known to her until after his death.

Said claim was duly presented to the commissioners on the insolvent estate of said H. Drusilla Mitchell, and by them allowed at the sum of $28,070.30, and the security therefor was by them found to be equal in value to said amount.

Mrs. Mitchell was adjudged an insolvent debtor by the Court of Probate for the district of Bristol, in 1896, and Edward A. Freeman was appointed the trustee in insolvency; and he appealed from the doings of the commissioners to the Superior Court.

*William C. Case* and *Percy S. Bryant,* for the claimant.

If the law of Illinois—the place of the contract—is to govern, Mrs. Mitchell is clearly liable on her guaranty. Rev. Stat. of Ill., Chap. 68, § 6, Ed. of 1881. The construction of this law by the Supreme Court of Illinois is found in the following cases: *Snell* v. *Snell,* 123 Ill. 403, 409; *Crum* v. *Sawyer,* 132 id. 432. Mrs. Mitchell's contract was made in Illinois. *Milliken* v. *Pratt,* 125 Mass. 264; *Hill* v. *Chase,* 143 id. 129; *Bell* v. *Packard,* 69 Me. 105; *Wright* v. *Remington,* 41 N. J. L. 48; *Baum* v. *Birchall,* 150 Pa. St. 164; *Phoenix Mut. L. Ins. Co.* v. *Leinon,* 52 Mo. 357; 1 Daniel on Neg. Inst. § 866; Rorer on Inter-State Law, 49, 50; *Chillingworth* v. *Eastern Tinware Co.,* 66 Conn. 306. Wherever the contract was made, it was made to be valid. It was made

" to have its entire beneficial effect and operation " in Chicago, where it is valid. The assignment of Mrs. Mitchell was valid. It was executed by her not only with the assent of her husband, but at his request, by his procurement and for his benefit, and this creates the strongest equitable claim against her estate. *Mason* v. *Fuller*, 36 Conn. 160; *Buckingham* v. *Morse*, 40 id. 461; *Spain* v. *Hamilton*, 1 Wall. 624; *Savage* v. *Gregg*, 150 Ill. 161.

*Frank L. Hungerford* and *Theodore M. Maltbie*, for the estate.

By the law of this State the guaranty was void. *Smith* v. *Williams*, 43 Conn. 409, 418; *Platt* v. *Hawkins*, 43 id. 139; *Bank* v. *Smith*, ibid. 327; *Way* v. *Peck*, 47 id. 23; *Gore* v. *Carl*, ibid. 291; *Kilbourn* v. *Brown*, 56 id. 149. The contract was completed in Connecticut and must be governed by its laws. *Wilson* v. *Lewiston Mill Co.* 44 N. E. Rep. (N. Y.), 959; *Cooke* v. *Orne*, 37 Ill. 186. Mrs. Mitchell's entire connection with the guaranty began and ended in this State. All her acts were done in this State where she had her domicile. *Greathead* v. *Walton*, 40 Conn. 226. The place where the guaranty passed from the dominion and control of the guarantor in its transmission to the creditor, is the place of delivery. A married woman not *sui juris* may make contracts within prescribed limits, but her intent cannot be considered in determining their locality, validity, extent, or force. *Yale* v. *Dederer*, 22 N. Y. 450. The validity of every act done and contract entered into at her domicil, by a married woman not *sui juris*, is determined by the law of her domicile, without regard to the persons with whom the contract is made. Sto. on Confl. of Laws, § 136; *Hyde* v. *Goodnow*, 3 Comyns, 266; See also, *Andrews* v. *Herriott*, 4 Cowen, 510, note " *a* "; *Union Nat. Bank* v. *Hartwell*, 84 Ala. 379; *Male* v. *Robert*, 3 Esp. 163; *Thompson* v. *Ketchum*, 8 Johns. (N. Y.) 189. If the guaranty when executed in Connecticut was void, no delivery outside the State, no place of performance in another State, could vitalize it and make it a valid and binding contract. Comity does not require that a non-resident shall be

allowed a remedy which is, by the policy of the State law, denied to its own citizens. *Reynolds* v. *Geary*, 26 Conn, 179, 183; *Hayden* v. *Stone*, 13 R. I. 106; *Case* v. *Dodge*, 18 id. 661; *Saul* v. *His Creditors*, 17 Martin, 569; *Bank of Louisana* v. *Williams*, 46 Miss. 618; *Ruhe* v. *Buck*, 124 Mo. 178. The interest of Mrs. Mitchell in her father's estate not being sole and separate, could not be charged even by an instrument properly framed for that purpose. *Riley* v. *Riley*, 25 Conn. 153, 161; *Butler* v. *Buckingham*, 5 Day 501; *Cooke* v. *Newell*, 40 Conn. 598.

BALDWIN, J. Mrs. Mitchell, being a citizen of Connecticut, married a citizen of Connecticut in 1857, and they continued to reside in this State until his death. Her marriage gave her, under the laws of the State then in force, substantially the *status* which belonged to a married woman at common law. Her personal identity, from a juridical point of view, was merged in that of her husband. Thereafter, during coverture, she could make no contract that would be binding upon her, even by his express authority. 1 Swift's Dig. 30. If she assumed to make such a contract, it was absolutely void.

These personal disabilities the common law imposed partly for the protection of the husband, and partly for that of the wife. To preserve what property rights remained to her, as far as might be, against his creditors, various statutes were from time to time enacted, until this long ago became recognized as the established policy of the State. *Jackson* v. *Hubbard*, 36 Conn. 10, 15. These statutes were mainly designed to protect her against others. The common law was sufficient to protect her against herself, and prior to 1877 it precluded her from making any contract as surety for her husband. *Kilbourn* v. *Brown*, 56 Conn. 149. A statute of that year establishes a different rule for women married after its enactment, but does not enlarge the rights of those previously married. General Statutes, § 2796.

Whenever a peculiar *status* is assigned by law to the members of any particular class of persons, affecting their general

position in or with regard to the rest of the community, no one belonging to such class can vary by any contract the rights and liabilities incident to this *status*. Anson's Principles of Contract, 328. If he could, his private agreements would outweigh the law of the land. *Jus publicum privatorum pactis mutari non potest.*

Coverture constitutes such a *status*, and one of its incidents in this State, at the time of Mrs. Mitchell's marriage, was a total disability to contract. So far as contracts of suretyship for their husbands are concerned, the disability of women married before 1877 remains absolute, unless both husband and wife have executed for public record a written contract, by which both accede to the provisions of the statute of that year and accept the rights which it offers to them. General Statutes, § 2798. No such contract was ever executed by Mrs. Mitchell.

The claim in favor of the First National Bank of Chicago which has been allowed by the commissioners on her estate, was founded on a debt due from a mercantile firm in Illinois of which her husband was a member, for which she had assumed to make herself responsible, as guarantor, by a writing dated in Illinois but signed in this State. The creditor had agreed, in Illinois, with the firm to forbear suit if she and they (as a firm and individually) would become parties to such a paper ; and, after they had signed it there, had given it to her husband, in Illinois, to take to her, in this State, for execution. He procured her signature and then mailed the instrument to one of his partners at Chicago, by whom it was there delivered to the bank. The agreement of forbearance had been conditioned on the execution of the guaranty by the firm, its individual members, and Mrs. Mitchell. It was her credit only that was to give it value. Its execution by the others gave the bank nothing which it did not have, as fully, before. It did not become complete until it received her signature. It did not then become operative as a security, until it had been delivered to the creditor.

Her husband cannot be deemed to have acted in procuring Mrs. Mitchell's signature, as the agent of the bank. No

finding to that effect was made by the trial court, and no such agency is implied from the circumstances of the transaction. He had a direct interest in obtaining the desired extension of credit. He was a principal in the obligation. He sent the paper, as soon as it was completed, not to the bank, but to another of the principals. If he represented anyone but himself, it was his copartners. The delivery of the paper by his wife to him, therefore, after her signature had been attached, was not a delivery to the bank, but simply purported to give him authority, as her agent, to make or procure such a delivery at some subsequent time.

If, therefore, the guaranty, so far as concerns her obligation upon it, was ever delivered, it was delivered, and so first took effect, in Chicago. But its delivery there could not affect her, unless it was made by her or by her authorized agent. Morse, the partner who actually handed it to the bank, stood in no better position than her husband, whether regarded as the servant of the latter, or as a partner with him. In either case, the agency, by virtue of which the delivery was made, was created, if at all, in Connecticut. But to create an agency is to enter into a contractual relation. Mrs. Mitchell had no capacity to make any contract whereby her legal position in respect to all or any of the other members of the community would be varied. It would have varied it in respect to her husband, could she have constituted him her agent to put her, by the delivery of an instrument of guaranty, in the situation of a surety for his debt to a third party. He therefore derived no authority from her to make the delivery to the bank, and, as to her, the instrument never was delivered.

It is true that the guaranty, if a binding contract, was a contract made in Illinois. It might also be assumed, so far as concerns the law of this case (although this is a point as to which we express no opinion), that it was one to be performed in Illinois, and that as to the principals in the transaction it was fully an Illinois contract, and to be governed by the law of Illinois, as respects any question as to its validity. By that law, a married woman was free to enter into

such an engagement, and to constitute an agent for that purpose. But the *lex loci contractus* is a rule of decision only when there is a contract, so made as to be subject to that law. It is a *petitio principii* to say that because the guaranty was delivered in Chicago, it is therefore to be held effectual or ineffectual, as against Mrs. Mitchell, by the law of that place. The underlying question is, was it, as to her, ever delivered at all? It was not so delivered unless delivered by her authority; and by the laws of Connecticut, where she assumed to give such authority, she could not give it. *Cooper* v. *Cooper*, L. R., 13 App. Cases, 88, 99, 100; Story on the Conflict of Laws, §§ 64, 65, 66*a*, 136; Dicey on the Conflict of Laws, Chap. XVIII. Rule 123.

Had Mrs. Mitchell been within the state of Illinois, when she signed the guaranty, it may be that her personal presence would have so far made her a resident of that State as to°subject her to its laws, in respect to acts done within its jurisdiction. But as whatever was done in Illinois to bind her to the bank was done under an agency constituted in Connecticut, it is the law of Connecticut which must determine as to the authority of the agent, and so as to the validity of the obligation which he, as such, undertook to impose upon her by the delivery in Chicago of the paper signed by her in Bristol.

The order drawn by Mrs. Mitchell on the executor of her father's will, directing him to pay over to the bank whatever might otherwise be coming to her as part of the estate in his hands, though dated at Chicago, was brought to her in behalf of the bank in Connecticut, signed and given back to the agent of the bank in Connecticut, accepted by the executor in Connecticut, and then mailed in Connecticut by its agent to the bank at Chicago. The whole transaction, therefore, was completed here. The order became operative, if at all, to transfer her interest in her father's estate, when the executor had notice of it, and agreed to comply with it by handing his written acceptance to the agent of the bank. That Mr. Mitchell was acting in that capacity seems clear from the finding that the bank, after the firm had become insol-

vent and made an assignment for the benefit of its creditors, prepared the paper and sent it to him, to procure her signature to it. No assignment which she could make would benefit the firm. If its result was to satisfy the claim of the bank, she would be subrogated to its place, and their creditors would receive no greater dividend. The order, also, was for the payment of a share in the estate of a deceased citizen of Connecticut, in course of settlement in its courts. Under these circumstances, its validity must be determined by the laws of Connecticut, and being dependent on the contractual act of a married woman, not for the benefit of herself, her family, or her estate, it was void.

There have been cases not differing essentially in principle from that at bar, in which courts, to whose opinions great consideration is due, have come to conclusions varying from those which we have reached. The leading one is *Milliken* v. *Pratt*, 125 Mass. 374. There a guaranty by a married woman of such debts as her husband might thereafter, contract was signed in Massachusetts, delivered there by her to him, and by him there mailed to the other party, in Maine. The court held that the contract became complete when the guaranty was received and acted upon by the latter, and not before ; and enforced it as one made and to be performed in Maine, where married women then had power to enter into such agreements. No reference was made to the fact (which may, perhaps, have been immaterial under the laws of Massachusetts), that the delivery was made by the husband, acting as the agent of the wife,—a fact which, in our view under the common law of Connecticut, is of controlling importance.

Engagements which coverture prevents a woman from making herself, she cannot make through the interposition of an agent, whom she assumes to constitute as such in the State of her domicile. If this were not so, the law could always be evaded by her appointment of an attorney to act for her in the execution of contracts. No principle of comity can require a State to lend the aid of its courts to enforce a security which rests on a transgression of its own law by

one of its own citizens, committed within its own territory. Such was, in effect, the act by which Mrs. Mitchell undertook to do what she had no legal capacity to do, by making her husband her agent to deliver the guaranty to the bank. He had no more power to make it operative by delivery in Chicago to one of his creditors in Illinois, than he would have had to make it operative by delivery here, had it been drawn in favor of one of his creditors in Connecticut. It is not the place of delivery that controls, but the power of delivery.

The Superior Court is advised to disallow all and every part of the claim of the First National Bank.

In this opinion the other judges concurred.