### FIRST NAT. BANK OF CHICAGO, ILL., v. MITCHELL.

(Circuit Court, D. Connecticut, January 3, 1898.)

#### No. 435.

CONTRACTS OF MARRIED WOMEN—CONFLICT OF LAWS—FOLLOWING STATE DECISIONS.

　　A decision by the supreme court of Connecticut, in insolvency proceedings, that a contract of guaranty dated and signed by others at Chicago, and to be performed in Illinois, which was afterwards signed by a married woman in Connecticut, and then delivered by her husband in Illinois, was, as to her, a Connecticut contract, and invalid under the law of that state for want of capacity to make such a contract, will be followed by a federal court in an action against her on the guaranty.

　　This was an action at law by the First National Bank of Chicago against H. Drusilla Mitchell, a married woman, upon a contract of guaranty.

　　Case, Bryant & Case, for plaintiff.
　　Hungerford & Maltbie, for defendant.

　　TOWNSEND, District Judge. Action on a guaranty, heard upon complaint and answer and an agreed statement of facts. The defendant is a resident of Connecticut, and a married woman, having been married in 1857, and having resided continuously at Bristol, Conn., since that time. Defendant's husband, G. H. Mitchell, was a member of a co-partnership, Morse, Mitchell & Williams, doing business at Chicago. At the request of her husband she signed a guaranty, which was taken by him to Chicago, and there delivered to the plaintiff. The guaranty was dated at Chicago, and had been signed by the members of the firm there before it was signed by the defendant. Plaintiff claims that, although defendant did not personally leave the state of Connecticut, yet as the written contract was dated at Chicago, and was delivered by her husband at Chicago, and was to be performed there, defendant must be taken to have made the contract at Chicago, and, as in Illinois a married woman is allowed to

contract for all purposes, defendant could so contract in Illinois, and is bound by the guaranty. After this suit was brought defendant made an assignment in insolvency. The plaintiff presented the claim herein involved to the commissioners on her estate, and it was allowed by them, and the case was taken by her trustee in insolvency by appeal to the superior court, and upon reservation to the supreme court of errors of Connecticut, where precisely the same facts were presented and passed upon. The court there held that defendant, being a married woman, had no capacity to make any such contract; that to sign the guaranty in Connecticut, and authorize her husband as her agent to deliver the guaranty at Chicago, was to enter into a contractual relation in Connecticut which she had no capacity to do; that, therefore, she could not, while in Connecticut, authorize her husband to take the guaranty to Chicago and deliver it; and that, therefore, it was never delivered by her.

Before considering the legal propositions involved in this decision, the question arises whether this court will enforce against a married woman, who has always resided in Connecticut, a contract made by her by a writing sent to another state, she not personally leaving the state of Connecticut, which the highest court of Connecticut has pronounced invalid and unenforceable in that state. In Milliken v. Pratt, 125 Mass. 375, the facts were practically identical; the guaranty in that case having been taken by the husband to the state of Maine. The court held that the contract was made in Maine, and valid in Massachusetts, saying:

"If the contract is completed in any state, it makes no difference, in principle, whether the citizen of this state goes in person or sends an agent, or writes a letter across the boundary line between the two states."

In finally deciding the question, however, the court lay stress upon the fact that at the time of the trial of the case the wife could have legally made the contract in Massachusetts, saying:

"The question, therefore, is whether a contract made in another state, which a married woman was not at the time capable of making under the law of this commonwealth, but was then allowed by the law of that state to make, and which she could now legally make in this commonwealth, will sustain a case against her in our courts."

And Milliken v. Pratt also seems to hold that the guaranty made in Maine, as above stated, would not be enforceable in Massachusetts if Massachusetts had not consented to such enforcement, saying:

"As the law of another state cannot operate nor be executed in this state by its own force, but only by the comity of this state, its approbation and enforcement here may be restricted by positive prohibition of statute. A state may always by express enactment protect itself from being obliged to enforce in its courts contracts made abroad by its citizens which are not authorized by its own laws. * * * It is possible, also, that in a state where the common law prevails in full force, by which a married woman was deemed incapable of binding herself by any contract whatever, it may be inferred that such an utter incapability, lasting throughout the joint lives of husband and wife, must be construed as so fixed by the settled policy of the state, for the protection of its own citizens, that it could not be held by the courts of that state to yield to the laws of another state in which she might undertake to contract."

In Bell v. Packard, 69 Me. 105, a married woman sent a contract to Maine, where she could have legally made it, and the supreme

court of Maine held that the contract was made in Maine, and was valid and enforceable there.

In Bowles v. Field, 78 Fed. 742, a married woman residing in Indiana, while transiently in Ohio, gave a note as surety for her husband. The laws of Indiana allowed married women to contract for all purposes, except as especially provided, and among the exceptions was a contract for suretyship. The court held that, having a general power to contract, this particular limitation could have no extraterritorial force. The court said: "It is not charged that she went to Ohio, and executed the notes as surety for her husband, for the purpose of evading the law of her domicile." This seems to be an intimation that, if she had not had a general power to contract, and had remained in Indiana, the contract would not have been enforceable.

The common law, which makes the contract of a married woman invalid, must still be accepted as the general rule for those states which have not made exceptions by statute. The three cases cited above, holding the contract of a married woman valid, are in states where a woman has the general power to contract, and it is implied in two of those decisions that the state of her domicile would have had the power to protect a married woman from the result of her contract made while personally present in such state, if it had chosen to do so.

It may be admitted that, as stated by Judge Story in his Conflict of Laws, § 103, in regard to incapacity incident to coverture, "the law of the place where the contract is made or the act is done now governs." And that, as stated in Scudder v. Bank, 91 U. S. 406, "the validity of a contract is to be determined by the law of the place where it is made." Yet I do not think this principle has yet been carried so far in any decided case as a judgment for the plaintiff in this case would require.

The capacity of citizens of a state, so long as they actually remain within the borders of the state, would seem to be a matter of local law, to be controlled by the laws of the state, and not to be evaded by the simple device of sending or mailing a letter to some other state. Suppose that the laws of some state should provide that infants might attain their majority and become capable of contracting at the age of 18 years, could it be held that a minor 18 years old in Connecticut could, by mailing a contract to that state, subject his property in Connecticut to execution, against the will of his guardian, and against the determination of the legislature and courts of Connecticut? "It may be said, generally, that wherever the decisions of the state courts related to some law of a local character which may have become established by those courts, or has always been a part of the law of the state, that the decisions upon the subject are usually conclusive, and always entitled to the highest respect of the federal courts. Where such local law or custom has been established by repeated decisions of the highest courts of the state, it becomes also the law governing courts of the United States sitting in that state." Bucher v. Railroad Co., 125 U. S. 555, 8 Sup. Ct. 974; Burgess v. Seligmann, 107 U. S. 20, 2 Sup. Ct. 10.

In the present case, the law by which the invalidity of a contract is established is the common law, and the decisions that a married woman has capacity to make such contracts are founded upon local statutes. In these circumstances I think it is the duty of this court to follow the decision of the Connecticut court of last resort. Let judgment be entered for defendant.