FIRST NAT. BANK OF CHICAGO v. MITCHELL et al.

(Circuit Court of Appeals, Second Circuit. March 1, 1899.)

No. 35.

GUARANTY BY MARRIED WOMAN—VALIDITY—CONFLICT OF LAWS.

Where a married woman in Connecticut executed and delivered to her husband, there, a guaranty, to enable him to obtain credit from plaintiff, in Illinois, to whom the husband sent it by mail, the contract is to be governed by the Illinois law, and is therefore binding on her, though she was incapacitated from making it by the laws of Connecticut.

Lacombe, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the District of Connecticut.

Wm. C. Case and Percy S. Bryant, for plaintiff in error.

Theodore Maltbie and Frank L. Hungerford, for defendants in error.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

WALLACE, Circuit Judge. This action was tried in the court below (84 Fed. 90) without the intervention of a jury, and, upon the facts set forth in the stipulation of the parties and found by the court, there should have been a judgment for the plaintiff for the sum indemnified by the guaranty signed by the defendant H. Drusilla Mitchell, if she, being a married woman, was competent to make the contract. In deciding adversely to the plaintiff the court below followed the decision of the supreme court of Connecticut in Freeman's Appeal, 68 Conn. 533, 37 Atl. 420, upon the same facts, in a suit brought by the plaintiff subsequent to the present action to establish the guaranty as a demand against the estate of the defendant in insolvency.

The question in the case is whether a guaranty payable in the state of Illinois, and delivered to the plaintiff there, signed by a married woman, at her domicile, in Connecticut, to enable her husband to procure credit with the plaintiff, delivered by her to her husband, and sent by him by mail to the plaintiff, is a valid contract; she being disqualified by the law of Connecticut from making a contract as surety, and authorized to do so by the laws of Illinois. In other words, the question is whether the incapacity to contract by the law of the state of a person's domicile attaches to his contractual act in another state, where the disability has been removed. This question has been much considered by commentators upon private international law, and has encountered the divergence of opinion which so frequently characterizes their essays. We shall not undertake to rehearse their views or summarize their conclusions, or to discuss the question upon principle. It has been considered and decided in respect to the incapacity of coverture and minority several times by the courts of this country, and uniformly with the same result, except in Freeman's Appeal. The previous authorities are collated in Milliken v. Pratt, 125 Mass. 374, and the opinion delivered is such a complete exposition of them that other references are un-

necessary. That judgment determines the precise question presented in this case. In that case the plaintiffs sued, in Massachusetts, a married woman, domiciled there, who had signed a guaranty for her husband, intended to be used by him to obtain credit with the plaintiffs at Portland, Me. She delivered it to her husband at their home in Massachusetts, and he mailed it there to the plaintiffs, in Portland; and the plaintiffs received it at Portland shortly after. By the law of Massachusetts at the time, a married woman was incapacitated to make such a contract. By the law of Maine, she was not. The court decided that the contract was made in Maine, and controlled by the law of that state; that, as regarded the capacity of the defendant, its validity depended upon the law of that state; and that, as the law of Maine authorized a married woman to bind herself by such a contract, it was a valid contract, and the plaintiffs were entitled to recover.

A case exactly coincident in its facts with the present case, and with Milliken v. Pratt, is Bell v. Packard, 69 Me. 105, except that, instead of signing a guaranty, the defendant in that case signed a note as surety for her husband. The court decided that the note was a Maine contract, and obligatory upon the defendant.

These adjudications proceed upon the considerations that the instrument was not effective for any purpose until delivered to the party for whose benefit it was prepared, that the place where it became operative was the place where the contract was made, and that the disqualification of the married woman in the state of her domicile did not accompany her in making a contract in a state where the disqualification had been removed. They are a consistent and logical application of that fundamental and most important rule of private international law, that a contract valid by the law of the place where it is made is valid everywhere.

In Bowles v. Field, 78 Fed. 742, a married woman domiciled in Indiana went to Ohio, and there executed notes as surety for her husband; she being incapacitated from making such contracts by the law of her domicile, but not by the law of Ohio. The court held the contracts valid, affirming the general proposition that the contract of a married woman, valid by the law of the place where it is made, is valid and binding upon her, notwithstanding that by the law of her domicile she is incapacitated from making such a contract.

These judgments meet our approval, and, upon their authority, we are of the opinion that the court below should have adjudged in favor of the plaintiff.

In Freeman's Appeal the court conceded that the guaranty was a contract made in Illinois. It based the decision upon the ground that the defendant could not constitute her husband her agent in Connecticut to deliver the instrument. The court used this language:

"Had Mrs. Mitchell been within the state of Illinois when she signed the guaranty, it may be that her personal presence would have so far made her a resident of that state as to subject her to its laws, in respect to acts done within its jurisdiction. But, as whatever was done in Illinois to bind her to the bank was done under an agency constituted in Connecticut, it is the law

of Connecticut which must determine as to the authority of the agent; and so as to the validity of the obligation which he, as such, undertook to impose upon her by delivery in Chicago of the paper signed by her in Bristol."

Inasmuch as the only "agency constituted in Connecticut," or the only necessary agency, was the intrusting her husband with a letter for deposit in the mail, we think the reasoning of the learned court to be ingenious, rather than convincing. The interposition of such an agency was not regarded of sufficient importance to require comment in Milliken v. Pratt or Bell v. Packard.

It is to be observed that the state court did not consider the contract one which ought not to be enforced, because violative of the policy of the state. Indeed, by the statute of 1877 (Gen. St. Conn. § 2796) as to women subsequently married, the disability to make such a contract no longer exists.

We are extremely reluctant to differ with the supreme court of Connecticut in a case involving the same facts, between substantially the same parties, not only because the opinion of that learned tribunal is always entitled to great consideration, but also because it is, in a sense, unseemly that there should be diverse judgments under such circumstances between a federal court sitting in that state and the highest court of the state. But the case is one which concerns the rights of a citizen of Illinois, acquired before the decision of the state court; and its decision depends, not upon the construction of local laws, but upon the application of the principles of general jurisprudence. In such cases the federal courts are in duty bound to exercise their own independent judgment.

In view of the decision of the supreme court of Connecticut, we should be glad to certify the question which we have thus considered to the supreme court for its instructions; but we do not feel authorized to do so, especially as that tribunal, under the power to issue a certiorari, can review our judgment, if it sees fit.

The judgment is reversed, with instructions to the court below to render a judgment for the plaintiff for the amount due by the terms of the guaranty.

LACOMBE, Circuit Judge, dissents.