Oscar L. Johnson et al. vs. Chris Mortenson et al.

First Judicial District, Hartford, October Term, 1929.
Wheeler, C. J., Maltbie, Haines, Hinman and Banks, Js.

Argued October 2d—decided November 7th, 1929.

*George E. Beers,* with whom was *Edward C. Carroll,* for the plaintiffs.

*Ralph O. Wells,* for the defendants.

HINMAN, J. The situation and obligations of the parties to this action—the plaintiff Johnson as general contractor, and the defendant Mortenson as subcontractor—so far as concerns the claimants as dependents of the employee, Pascoal, were determined in *Pascoal* v. *Mortenson,* 109 Conn. 39, 145 Atl. 149, wherein the award against both, and their respective insurers, jointly, was affirmed as being in conformity to § 5345 of the General Statutes. We there held (p. 44) that, under that statute, no distinction can be recognized "in liability to the claimant" as between a contractor and his immediate employer, each being "a principal employer as to the injured workman." *Palumbo* v. *Fuller Co.,* 99 Conn. 353, 365, 122 Atl. 63; *Crane* v. *Peach Brothers,* 106 Conn. 110, 137 Atl. 15; *Fox* v. *Fafnir Bearing Co.,* 107 Conn. 189, 139 Atl. 778.

The instant case presents the further question, advanced in *Pascoal* v. *Mortenson, supra,* but not determined by the award and held not to have been within the appeal, as to what are the rights and liabilities of Johnson and Mortenson, as between themselves. The claim made on behalf of Johnson is that, although he as general contractor and Mortenson as subcontractor, are both, without distinction as between them, liable for compensation on account of Pascoal, yet, except in favor of such employee, the obligation to

pay compensation is primarily that of Mortenson, the immediate employer of the injured workman, and the situation of the general contractor is such as to entitle him to reimbursement by such immediate employer, for compensation payments to which he is subjected by reason of the award.

The Compensation Acts of some of the States contain express provisions imposing primary liability upon the subcontractor, as immediate employer, and making the principal contractor only secondarily liable. Also, "In many instances, if the contractors or subcontractors have insured their liability to their employees, then the principals or principal contractors are relieved from liability. But if a contractor or subcontractor, who is the direct employer, has failed to secure compensation payments by insurance, then the liability attaches to the principal or the principal contractor." Bradbury's Workmen's Compensation (3d Ed.) p. 264. Our Act contains no such provisions. Under § 5345, in cases falling within it, the principal employer or contractor, his subcontractor, and their respective insurers, if any, are equally responsible, so far as concerns the claimant. *Palumbo* v. *Fuller Co., supra,* p. 365.

Some of the Compensation Acts expressly provide a remedy for the contractor as against the subcontractor. The Virginia Act (§ 20) provides that the contractor shall be liable to pay to the employee of the subcontractor any compensation which he would have been liable to pay if that workman had been immediately employed by him, but that "where the principal contractor is liable to pay compensation under this section, he shall be entitled to indemnity from any person who would have been liable to pay the compensation" independent of this section. The Illinois Act (§ 31) provides that "in the event any such person [the contractor] shall pay compensation under this section he

may recover the amount thereof from the . . . subcontractor, if any." These examples fairly illustrate the nature of the enactments in those States which undertake to legislate on this subject. See Bulletin of Labor Statistics, Dept. of Labor, No. 423, Workmen's Compensation Legislation as of July 1st, 1926.

As we have seen, § 5345 has been construed as recognizing no distinction between principal contractor and subcontractor as to liability to a claimant for compensation but as making both primarily liable to him. The better view and practice of the compensation commissioners appears to have been to regard their jurisdiction as limited to determination of the right of the employee to compensation and as to who is liable therefor to such claimant, leaving the rights and liabilities between those held jointly liable to the claimant to "be worked out in such proceedings, among themselves, as may be brought for the purpose." See *Freeman* v. *Furrey*, 2 Conn. Comp. Dig., Part I, 400, 402.

In *Witchekowski* v. *Falls Co.*, 105 Conn. 737, 741, 136 Atl. 565, it was held that "for the commissioner to attempt to determine . . . which of two insurers is liable for payments already made by the employer was clearly to exceed his jurisdiction"—citing *Hargraves* v. *Shelvin Mfg. Co.*, 179 N. Y. App. Div. 477, 165 N. Y. Supp. 960. It appears that equal impropriety would characterize determination of the question of ultimate liability between contractor and subcontractor, as to which no rule is afforded by the statute which confers the commissioner's jurisdiction but marks its limitations.

The object of such provisions as those contained in § 5345 is to afford full protection to workmen, by preventing the possibility of defeating the Act by hiring irresponsible contractors or subcontractors to carry on a part of the employer's work. *White* v. *George A.*

*Fuller Co.*, 226 Mass. 1, 4, 114 N. E. 829. "The special purpose of § 5345 is to protect employees of minor contractors against the possible irresponsibility of their immediate employers. . . . Otherwise § 5345, and, indeed, the whole policy of the Workmen's Compensation Act, might be evaded by the device of the owner parcelling out the work of construction among a number of separate contractors no one of whom employed five or more workmen." *Bello* v. *Notkins,* 101 Conn. 34, 38, 124 Atl. 831; *Minowich* v. *Green,* 4 Conn. Comp. Dig., Part I, 695, 699. This object in no way concerns the further and distinct consideration—the rights of principals and contractors and subcontractors between themselves. With one exception, presently to be mentioned, the Connecticut Compensation Act relates entirely to the liabilities of employers to claimants for compensation by or on account of injured employees, to the exclusion of regulation of rights and liabilities of such employers, *inter sese.* Section 5346 confers a right of action, by an employer who has paid or by an award has been obligated to pay compensation, against another person who has incurred a legal liability to pay "damages" in respect to the injury to which the compensation relates. The legislature also might have expressly prescribed and conferred a right of action by a principal or principal contractor against a contractor or subcontractor, to recover compensation paid by the former, or a right to indemnity therefor, as in the illustrative provisions in other States, above quoted. But no such provision has been made or attempted in this State. The answers to the questions reserved must be sought, not through construction of or implication from our Workmen's Compensation Act, but by application of general principles growing out of the relations, to each other, of the parties to this action and the situation resulting from the application of

§ 5345, as between them, on the one hand, and the claimants, on the other.

Pascoal's contract of employment with Mortenson gave him no right to recover wages from Johnson, and the latter had no power of direction over him. The presence of § 5345 in the Act evinces, of itself, that no relation exists between a contractor and the employee of a subcontractor which, unaided by the provisions of this section, would involve any right to compensation from the contractor as an employer of the claimant. The fact that, for the limited purpose of attainment of the object of that section, he is made subject to a like liability as the actual employer of the injured workman, does not alter their status and relations, or abolish the logical distinctions between them, when the object of the statute has been served and rights are to be determined which the statute does not create or affect.

No relation of employer and employee existed between Johnson and Pascoal, either as those terms are commonly understood and used or as they are defined in the Compensation Act (§ 5388): " 'Employee' shall mean any person who has entered into or works under any contract of service or apprenticeship with an employer. . . . 'Employer' shall mean any person . . . using the services of another for pay." "The employee contracts to produce a given result, subject to the lawful orders and control of his employer in the means and methods used in that employment. He is bound in some degree to the duty of service to the employer." The employer has " 'The right to direct what shall be done and when and how it shall be done; . . . the right to the general control.' " *Aisenberg* v. *Adams Co.*, 95 Conn. 419, 421, 111 Atl. 591. These distinctive attributes obtained only as between the workman, Pascoal, and his immediate employer, Mortenson, and the same is true as to the further significant circumstance

of the payment and receipt of wages—the "pay" for which the employer uses the services of his employee, and the "earnings" upon which the amount of compensation awarded is based. This wage was included, as such, only in the payroll of the subcontractor, upon the amount of which the premium upon compensation insurance is based.

As between Johnson and Mortenson, the liability of the latter should be regarded as primary and that of the former as secondary, only. Whether Johnson's situation is to be regarded as, in a sense, that of surety for Mortenson, or as a "quasi guarantor for the compensation," as held in *Byrne* v. *Hitner's Sons Co.,* 290 Pa. St. 225, 232, 138 Atl. 826, 828, or otherwise, he and his insurer have been obligated by the award, and may be forced to pay compensation which logically and equitably should be made by Mortenson, the only actual employer of the claimant, or by his insurer.

"There is always at least an implied contract between the parties which obliges a principal to reimburse his surety when the latter has paid the debt; he then becomes a creditor of the principal, and, the debt having matured and being due, is entitled to recover from the latter the amount so paid." 32 Cyc. 250; *Babcock* v. *Hubbard,* 2 Conn. 536; *Hudson Trust Co.* v. *Cushman,* 93 Conn. 119, 122, 105 Atl. 344.

"Where a guarantor, who has entered into a contract of guaranty at the request of or with the consent of the principal obligor, pays or is compelled to pay his principal's debt, the law raises an implied promise . . . on the part of the principal to reimburse the guarantor, and on the payment of the debt the guarantor at once has a right of action against the principal for reimbursement of the amount which he has paid." 28 Corpus Juris, 1037; *Hopson* v. *Aetna Axle & Spring*

*Co.,* 50 Conn. 597; *Freeman's Appeal,* 68 Conn. 533, 37 Atl. 420; *Monson* v. *Drakeley,* 40 Conn. 552.

"Under the early jurisdiction at law, in the absence of express contracts for indemnity or exoneration, it was left to the caprice of the creditor to determine upon which of several parties bound for the same obligation the burden should fall, the loss being left wherever the creditor, by his choice of a defendant, might put it. This inadequacy of remedy on the part of the victim, and consequent failure of justice, became, however, a ground for the interposition of equity, and the proper readjustment of such burdens was, at an early day, an important field of equitable jurisdiction. The efforts of courts of equity have been directed toward placing the loss, as far as possible, on the parties ultimately liable—or as between two or more not ultimately liable, on the party whose liability is prior—and, as between parties equally liable, toward distributing the loss equally among them. The former result is reached by an action for reimbursement, and the latter by an action for contribution. Both of these results are assisted by the action for exoneration, and the remedial process of subrogation. . . . When a party only subsequently liable for an obligation, performs any part of it, he is entitled in equity to be reimbursed or indemnified to the amount of his loss, by any other party to the obligation whose liability is prior to his own. This right is given not only to the strict surety . . . but to a guarantor, a subsurety, suing the principal debtor, or a party not a strict surety, but merely secondarily liable for the debt, even *ex delicto,* in certain cases." 5 Pomeroy's Equity Jurisprudence (2d Ed.) p. 5162 *et seq.*

"Whenever one person has in his possession money which in equity and good conscience he should not retain from another, the later may recover it." *Rob-*

*erti* v. *Barbieri,* 105 Conn. 539, 543, 544, 136 Atl. 35. The same principle dictates that when one has been required to pay money which another, as between them, was under a primary duty to pay, the former should be enabled to obtain reimbursement.

The plaintiffs are entitled to recover from the defendants any sums which they have paid or may pay, in good faith, upon matured obligations or have been forced to pay or may hereafter be forced to pay, toward the satisfaction of the award referred to in the complaint. The statement of this conclusion affords adequate answer to the questions reserved. No costs will be taxed in this court against either party.

In this opinion the other judges concurred.