[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs, City of Bristol (Bristol), the Bristol Board of Education, Richard Croce and Paul Castolene seek a judgment against the defendant, Dickau Bus Company (Dickau), indemnifying them for the $50,000 settlement, as well as attorney fees in the amount of $27,831.14 and costs in defending three related lawsuits. A trial to the court was held on June 16, 1999. In addition to the testimony of the former owner of Dickau, the parties stipulated to the following facts:
On September 18, 1992, Lorraine Clyburn (Clyburn), while driving a school bus, struck and killed Brandon Courchesne near the intersection of Rockwell Avenue and Pierce Street in Bristol, Connecticut. Clyburn worked for approximately four years as a school bus driver for Dickau.
Terri B. Courchesne, Brandon's mother, and Kailey Courchesne, Brandon's sister, brought an action against Dickau, Clyburn, the Bristol Board of Education and Richard Croce (Croce), the Chairman of the Bristol Board of Education, seeking damages for medical expenses on her own behalf and for bystander emotional distress on behalf of Kailey who witnessed the accident. Terri Courchesne, as Administratnix of Brandon's estate, brought a second action against the same defendants for wrongful death. Finally, Michael Courchesne, Brandon's father, who also witnessed the accident, brought an action against Dickau, Clyburn and the Bristol Board of Education claiming damages for bystander emotional distress. Michael Courchesne subsequently amended his CT Page 13325 pleadings to include two additional defendants, Paul Castolene (Castolene), an employee of the Bristol Board of Education, and the City of Bristol.
Dickau and Clyburn settled the three lawsuits with the Courchesnes for $950,000 and paid an additional $7,032.25 to the Courchesnes on behalf of Clyburn as part of a court ordered restitution. Bristol, the Bristol Board of Education, Croce and Castolene, the plaintiffs in the present action, settled all three lawsuits with the Courchesnes for $50,000.
The parties stipulated that at the time of the accident, all the mirrors on the bus were working properly, including the front crossover mirrors, which allow the bus driver to observe the area immediately in front of the bus. (Parties' Stipulation of Facts, ¶¶ 9, 12.) At the time of the accident, the front crossover mirrors were adjusted and working properly and "would have allowed [Clyburn] to see any person located in front of the bus." (Parties' Stipulation of Facts, ¶¶ 13-14.) The parties also stipulated that a "reasonable and prudent bus driver would check both crossover mirrors before moving the bus forward after having discharged any students." (Parties' Stipulation of Facts, ¶ 28.) Moreover, the parties stipulated that "Dickau Bus Company and Lorraine Clyburn were in control of the bus that caused the fatal injuries to Brandon" and that "Dickau Bus Company and/or Lorraine Clyburn had a duty to use reasonable care in the operation of the school bus that was the cause of Brandon Courchesne's death." (Parties' Stipulation of Facts, ¶¶ 25-26.) Finally, the parties stipulated that the "plaintiffs did not know of or had no reason to anticipate that Dickau Bus Company and/or Lorraine Clyburn would act negligently causing Brandon Courchesne's death." (Parties' Stipulation of Facts, ¶ 27.)
"[I]ndemnity involves a claim for reimbursement in full from one on whom a primary liability is claimed to rest. . . ." Kaplanv. Merberg Wrecking Corp. , 152 Conn. 405, 412, 207 A.2d 732
(1965). Ordinarily, ajoint tortfeasor has no right to indemnity or contribution. Skuzinski v. Bouchard Fuels, Inc.,240 Conn. 694, 697, 694 A.2d 788 (1997). The courts, to balance the harshness of this rule, have carved out an exception that allows a passive tortfeasor to receive indemnification from an active, primary tortfeasor. See, e.g., Johnson v. Mortenson,110 Conn. 221, 229, 147 A. 705 (1929). "Where . . . one of the defendants is in control of the situation and his negligence alone is the direct immediate cause of the injury and the other defendant does CT Page 13326 not know of the fault, has no reason to anticipate it and may reasonably rely upon the former not to commit a wrong, it is only justice that the former should bear the burden of damages due to the injury. . . . Under the circumstances described, [the courts] have distinguished between `active or primary negligence,' and `passive or secondary negligence'. . . . Indemnity shifts the impact of liability from passive joint tortfeasors to active ones." Skuzinski v. Bouchard Fuels, Inc., supra, 240 Conn. 697.
Four separate elements must be demonstrated for the plaintiffs to establish their right to indemnification from the defendant, Dickau Bus Co., Inc. The plaintiffs must show that: (1) Dickau was negligent; (2) Dickau was the direct and immediate cause of the accident; (3) Dickau was in exclusive control of the situation; and (4) the plaintiffs did not know of the negligence of Dickau, had no reason to anticipate it and could reasonably rely on Dickau not to be negligent. Kaplan v. Merberg WreckingCorp. , supra, 152 Conn. 416.
Because Dickau stipulated to the facts necessary to satisfy elements two through four of the elements set forth in Kaplan v.Merberg Wrecking Corp. , supra, 152 Conn. 416, the only issue presented relates to the first element. See (Parties' Stipulation of Facts, ¶¶ 25-27.)
Dickau argues that plaintiffs cannot satisfy the negligence element for two reasons. First, Dickau maintains that the allegations in the underlying lawsuits were different as to plaintiffs and defendant who were co-defendants in the Courchesne litigation. It maintains that "[t]he allegations against the City of Bristol were managerial and discretionary, whereas the allegations against defendant Dickau were motor vehicle moving violations." (Defendant's Trial Memorandum, p. 3) Because the allegations against each set of defendants were different, Dickau contends that an indemnification claim cannot be maintained against it. Second, Dickau argues that the Kaplan v. MerbergWrecking Corp. , supra, 152 Conn. 416, exception applies only when there has been "an underlying negligence finding against the Bristol Board of Education or its employees, which allegation creates the duty on an active basis of the defendant [Dickaul herein." (Defendant's Trial Memorandum, p. 5-6.) It states that "[i]n fact, once the defendants [Dickau] herein had been released from the Courchesne lawsuit, paid their agreed settlement and obtained a general release, there was no further responsibility by them to the Courchesnes" to pay the present plaintiffs CT Page 13327 indemnification claim. (Defendant's Trial Memorandum, p. 6.) For these reasons, Dickau maintains that the plaintiffs cannot receive indemnification from it.
The court rejects Dickau's argument that the allegations in the underlying lawsuits as to each set of defendants therein must be the same to maintain an indemnification claim against them. Dickau does not cite any case law in support of this theory, nor has the court found any case law supporting such a proposition. Cf. Skuzinski v. Bouchard Fuels, Inc., supra, 240 Conn. 699,701-02 (rejecting comparable theory where appellee maintained that a successful indemnification claim must establish an independent legal relationship between the parties). In fact, contrary to Dickau's assertion, claims for indemnification have been successfully brought although the theories raised against each joint tortfeasor were ultimately different from each other. See, e.g., Skuzinski v. Bouchard Fuels, Inc., supra,240 Conn. 695-96 (raising indemnification claim against third-party defendant for failing to remove snow and ice where defendant/third-party plaintiff hit and injured plaintiff);Saucier v. 5-D's Skating Center, Inc., Superior Court, judicial district of Waterbury, Docket No. 131232 (January 7, 1998,Shortall, J.) (raising indemnification claim against third-party defendants for negligently colliding with plaintiff at skating rink while defendant/third-party plaintiff allegedly liable for failing to provide adequate security and supervision); Katsetosv. Viking Construction, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 160359 (November 6, 1998, Hickey, J.) (bringing indemnification claim against third-party defendant for negligent design and supervision of construction of building where defendant/third-party plaintiff allegedly liable for negligent construction of building); Satulav. Yale University, Superior Court, judicial district of New Haven, Docket No. 404649 (December 7, 1998, Jones, J.) (bringing indemnification claim against third-party defendant for negligent design where defendant/third-party plaintiff allegedly liable for negligent construction of patio).
The party seeking indemnification need only satisfy the elements enumerated in Kaplan v. Merberg Wrecking Corp. , supra,152 Conn. 416. Thus, it is irrelevant that the underlying claims against the present plaintiffs were managerial or discretionary, in contrast to the motor vehicle violation claims against Dickau. Since the parties have stipulated as to three of the elements of an indemnification claim, the plaintiffs in the present action CT Page 13328 need only show that Dickau was primarily negligent in causing the injury to the decedent, Brandon Courchesne. See id.
The court also rejects Dickau's argument that a negligence finding must be found against it in order to maintain the present indemnification action. General Statutes § 52-598a states that "[n]otwithstanding any provision of this chapter, an action for indemnification may be brought within three years from the date of the determination of the action against the party which is seeking indemnification by either judgment or settlement." (Emphasis added.) "Words in a statute must be given their plain and ordinary meaning . . . and be interpreted in its natural and usual meaning unless the context indicates that a different one was intended." (Internal quotation marks omitted.) Caldor, Inc.v. Heffernan, 183 Conn. 566, 570, 440 A.2d 767 (1981). The plain construction of General Statutes § 52-598a allows a party to bring an indemnification action even though the underlying lawsuit resulted in a settlement. See Hammond v. Waterbury,219 Conn. 569, 594 A.2d 939 (1991) (allowing indemnification claim under § 3122 of the Waterbury city code where underlying claim concluded in a settlement). Thus, it is unnecessary to have a negligence finding in the underlying action to maintain an indemnification action against Dickau.
Moreover, the court disagrees with Dickau's contention that the settlement contracted between them and the Courchesnes absolves them from indemnifying the plaintiffs. General Statutes § 52-572e (b) states that "[a] release by the injured person, or his legal representative, of one joint tortfeasor does not discharge the other tortfeasors unless, and only to the extent, the release so provides." See also Sims v. Honda Motor Co.,225 Conn. 401, 420, 623 A.2d 995 (1993) (holding that settlement that releases "any and all other persons, firms and corporations" discharges only those joint tortfeasors whom the contracting party actually intended to release); but see Alvarez v. New HavenRegister, Inc., 249 Conn. 709, 725 ___ A.2d ___ (1999) (holding that General Statutes § 52-572e (b) does not apply and that general release action. In Sims v. Honda Motor Co., supra,225 Conn. 417, the Connecticut Supreme Court, in analyzing the scope of a general release, recognized that a settling tortfeasor may still bear additional liability to another joint tortfeasor through indemnification. "The possibility that a settling tortfeasor may incur further liability to another tortfeasor is not fanciful. Although the common law of this state entirely prohibited contribution among joint tortfeasors . . . the CT Page 13329 legislature has enacted statutes allowing a tortfeasor to implead, in certain circumstances, potentially liable joint tortfeasors. . . . A settling tortfeasor therefore runs thepotential risk of being held liable to a joint tortfeasor if theinjured party subsequently elects to pursue a claim against sucha joint tortfeasor." (Citations omitted; emphasis added.) Id., 417-18.
Accordingly, judgment may enter in favor of the plaintiffs in the amount of fifty thousand dollars ($50,000) plus attorneys' fees in the amount of twenty-seven thousand eight hundred thirty-one dollars and fourteen cents ($27,831.14) plus costs.
Peck, J.